**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

NEW YORKERS AGAINST CONGESTION
PRICING TAX, *et al.*,

              Plaintiffs,

       v.                                                    No. 24 Civ. 367 (LJL)

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

              Defendants.

_____

MICHAEL MULGREW, *et al.*,

              Plaintiffs,

       v.                                                    No. 24 Civ. 1644 (LJL)

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

              Defendants.


**MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2728
Email:  zachary.bannon@usdoj.gov


ZACHARY BANNON
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

LEGAL AND FACTUAL BACKGROUND .................................................................... 2

    I.     The National Environmental Policy Act ................................................................ 2

    II.    Statutory Limitation on Time to Challenge Transportation Projects..................... 4

    III.   Factual Background ............................................................................................... 5

          A.    Passage of the Traffic Mobility Act.......................................................... 5

          B.    Development of the Final EA and FONSI.................................................. 6

          C.    Re-evaluation Based on the Final Tolling Schedule.................................. 8

STANDARD OF REVIEW .............................................................................................. 10

ARGUMENT ................................................................................................................... 11

    I.     Plaintiffs' Challenge to the Final EA and FONSI is Time-Barred ...................... 11

    II.    Plaintiffs' Challenge to the FHWA's Forthcoming Re-evaluation is Unripe....... 13

CONCLUSION................................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 10

*Brodsky v. U.S. Nuclear Reg. Comm'n*,
704 F.3d 113 (2d Cir. 2013) ................................................................................. 2

*Citizens for Appropriate Rural Roads, Inc. v. Foxx*,
No. 11-1031, 2015 WL 179571 (S.D. Ind. Jan. 4, 2015) .................................... 12

*Croci v. Town of Haverstraw*,
175 F. Supp. 3d 373 (S.D.N.Y. 2016) ................................................................. 10

*Dine Citizens Against Ruining Our Env't v. Klein*,
676 F. Supp. 2d 1198 (D. Colo. 2009) ................................................................ 15

*Ellul v. Congregation of Christian Bros.*,
774 F.3d 791 (2d Cir. 2014) ................................................................................. 10

*Friends of Animals v. Romero*,
948 F.3d 579 (2d Cir. 2020) ................................................................................. 2

*Gunpowder Riverkeeper v. FERC*,
807 F.3d 267 (D.C. Cir. 2015) ............................................................................. 4

*Highland Vill. Parents Grp. v. U.S. Fed. Highway Admin.*,
562 F. Supp. 2d 857 (E.D. Tex. 2008) ............................................................ 10, 12

*Idaho Cmty. Action Net. v. U.S. Dep't of Transp.*,
545 F.3d 1147 (9th Cir. 2008) ............................................................................. 15

*Jurist v. Long Island Power Auth.*,
538 F. Supp. 3d 254 (E.D.N.Y. 2021) ................................................................. 14

*Knowles v. U.S. Coast Guard*,
924 F. Supp. 593 (S.D.N.Y. 1996) ...................................................................... 4

*Lamberti v. MTA*,
565 N.Y.S.2d 111 (1st Dep't 1991) ..................................................................... 1

*Marsh v. Or. Natural Res. Council*,
490 U.S. 360 (1989) ............................................................................................. 3

*Montlake Cmty. Club v. Mathis*,
No. 17-1780, 2019 WL 3928732 (W.D. Wash. Aug. 20, 2019).............................. 12

*Native Songbird Care and Conservation v. LaHood*,
No. 13 Civ. 2265 (JST), 2013 WL 3355657 (N.D. Cal. July 2, 2013) .................. 12, 13, 15, 16

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003)............................................................................... 14

*Norton v. Fed. Highway Admin.*,
No. 01 Civ. 891, 2002 WL 31017416 (W.D.N.Y. Aug. 8, 2002)....................... 14, 15

*Prisons, Inc. v. U.S. Dep't of Just.*,
197 F. Supp. 2d 226 (W.D. Penn. 2001)..................................................... 4

*Pub. Citizen v. Nuclear Regulatory Comm'n*,
845 F.2d 1105 (D.C. Cir. 1988)................................................................. 16

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989)............................................................................... 2

*South Trenton Residents Against 29 v. Fed. Highway Admin.*,
176 F.3d 658 (3d Cir. 1999).................................................................... 4

*Tahoe Cabin, LLC v. Fed. Highway Admin.*,
No. 22 Civ. 175 (RCJ), 2023 WL 2021289 (D. Nev. Feb. 14, 2023)................. 10, 12

*Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.*,
289 F.R.D. 637 (D. Or. 2013).................................................................. 10, 12

*Village Green at Sayville, LLC v. Town of Islip*,
43 F.4th 287 (2d Cir. 2022) .................................................................... 10

*Vt. Pub. Interest Research Grp. v. U.S. Fish & Wildlife Serv.*,
247 F. Supp. 2d 495 (D. Vt. 2002)............................................................ 13

*Vt. Yankee Nuclear Power Corp. v. NRDC*,
435 U.S. 519 (1978)............................................................................... 2

*Yorkshire Towers, Co., L.P. v. U.S. Dep't of Transp.*,
No. 11 Civ. 1058 (TPG), 2011 WL 6003959 (S.D.N.Y. Dec. 1, 2011) ............... 4, 12, 13

**Statutes**

23 U.S.C. § 129................................................................................... 6

23 U.S.C. § 139.......................................................................... *passim*

23 U.S.C. § 149 ................................................................................................................ 6

23 U.S.C. § 301 ................................................................................................................ 6

42 U.S.C. § 4321 .............................................................................................................. 1

42 U.S.C. § 4332............................................................................................................... 2

N.Y. Veh. & Traf. Law § 1701 ....................................................................................... 5, 6

Pub. L. 114-94 .................................................................................................................. 4

Pub. L. 105-178 ................................................................................................................ 6

Pub. L. 109-59 .............................................................................................................. 4, 6, 9

## Regulations

23 C.F.R. § 771 ................................................................................................................ 3

23 C.F.R. § 771.115 ......................................................................................................... 3

23 C.F.R. § 771.119 ......................................................................................................... 3

23 C.F.R. § 771.129 ....................................................................................................... 3, 16

40 C.F.R. § 1500 .............................................................................................................. 3

40 C.F.R. § 1501.6 ........................................................................................................... 3

**INTRODUCTION**

Plaintiffs in *New Yorkers Against Congestion Pricing* ("*NYAGC*") and *Mulgrew*[1] (together "Plaintiffs") assert claims against the Federal Defendants[2] challenging the sufficiency of the Federal Highway Administration's ("FHWA") environmental review of the Manhattan Central Business District ("CBD") Tolling Program ("the Project"), as well as the sufficiency of the Federal Defendants' forthcoming re-evaluation of that review. These claims are time-barred and unripe, respectively.

As to the initial review, the FHWA issued a Final Environmental Assessment ("EA") for the Project on May 5, 2023, and Finding of No Significant Impact ("FONSI") for the Project on June 23, 2023. As the FHWA clearly informed the public via a Federal Register notice published on June 28, 2023, any challenges to the analysis in those documents under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, had to be brought by November 23, 2023. But the *Mulgrew* Plaintiffs did not file suit until January 4, 2024, and the *NYAGC* Plaintiffs did not file until January 18, 2024. Thus, their claims are time-barred.

Plaintiffs also challenge the sufficiency of FHWA's re-evaluation of its prior conclusions based on the final tolling schedule ultimately adopted by the Triborough Bridge and Tunnel Authority ("TBTA"). But the TBTA has not yet adopted a final tolling schedule, and the FHWA

---

[1] There are dozens of individual plaintiffs named in the *Mulgrew* and *NYAPC* actions. Several of the plaintiffs are sitting New York City councilmembers purporting to sue in their official capacity. They are without power to do so under the New York City Charter and should be dismissed. *See* N.Y. City Charter §§ 394-395; *see also Lamberti v. MTA*, 565 N.Y.S.2d 111 (1st Dep't 1991) (dismissing claim brought by City councilmember challenging an increase to the toll on the Verrazano Narrows Bridge on the ground that the New York City Charter required the councilmember to be represented by the Corporation Counsel, which he was not).

[2] The Federal Defendants are the U.S. Department of Transportation ("DOT"), the Federal Highway Administration, Shailen Bhatt, in his official capacity as Administrator of FHWA, and Richard J. Marquis, in his official capacity as Division Administrator of the New York Division of FHWA.

has therefore not yet completed (and, indeed, cannot yet complete) its re-evaluation.  These claims are therefore unripe.

For the reasons outlined below, Claims I & II of both the *NYACP* Amended Complaint (*see NYAPC*, Dkt. No. 54 ("*NYAGC* Am. Compl.") ¶¶ 164-176) and the *Mulgrew* Amended Complaint (*see Mulgrew*, Dkt. No. 19 ("*Mulgrew* Am. Compl.") ¶¶ 145-160) should be dismissed.

## LEGAL AND FACTUAL BACKGROUND

### I.  The National Environmental Policy Act

Congress enacted NEPA to ensure federal agencies consider the environmental consequences of projects before committing resources and to facilitate agencies' communication with the public about their environmental analyses.  *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350-52 (1989).  As the Supreme Court has recognized, NEPA is a procedural statute that does not mandate substantive results.  *Robertson*, 490 U.S. at 350-51.  Rather, it is designed "to insure a fully informed and well-considered decision" in the examination of potential environmental impacts of a proposed agency action.  *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 558 (1978); *see also Robertson*, 490 U.S. at 351 ("NEPA merely prohibits uninformed—rather than unwise—agency action."); *Friends of Animals v. Romero*, 948 F.3d 579, 585 (2d Cir. 2020).

To meet these goals, NEPA requires that federal agencies assess the effects of proposed major federal actions on the human environment.  *See* 42 U.S.C. § 4332(2)(C); Executive Order No. 11,514, 35 Fed. Reg. 4247 (Mar. 7, 1970).  NEPA requires that one of three classes of review be conducted, depending upon, in part, the expected extent of the environmental impact.  *See Brodsky v. U.S. Nuclear Reg. Comm'n*, 704 F.3d 113, 119-20 (2d Cir. 2013).  First, actions that do not individually or cumulatively have a significant environmental effect are entitled to a

Categorical Exclusion from further environmental analysis.  23 C.F.R. § 771.115.[3]  Second, where

an action may have a significant impact on the environment, an agency must prepare an

Environmental Assessment ("EA") to determine whether preparation of a further Environmental

Impact Statement ("EIS") is necessary.  23 C.F.R. § 771.115.  The EA is a concise document

intended to help the agency "[d]etermine which aspects of the proposed action have potential for

social, economic, or environmental impact; identify alternatives and measures that might mitigate

adverse environmental impacts; and identify other environmental review and consultation

requirements that should be performed concurrently with the EA."  23 C.F.R. § 771.119(b).  If an

agency determines that an EA is sufficient (and, therefore, that an EIS is not required), the agency

must set forth its reasons in a FONSI.  23 C.F.R. § 771.119(g)-(h); *see also* 40 C.F.R. § 1501.6(c)

(noting a FONSI may rely on mitigation measures to find "no significant impacts").  Alternatively,

if the project will "significantly affect the environment," the agency must prepare an EIS.  23

C.F.R. § 771.115(a).

The FHWA's NEPA regulations explicitly provide for re-evaluations of prior NEPA

determinations when there are remaining federal approvals for a project.  *See* 23 C.F.R. § 771.129;

*see also NEPA Re-Evaluation Joint Guidance* (Aug. 14, 2019).[4]  Specifically, the agency must

"determine, prior to granting any new approval related to an action or amending any previously

approved aspect of an action, including mitigation commitments, whether an approved

environmental document remains valid."  23 C.F.R. § 771.129.  In other words, "the purpose of

---

[3] NEPA created the Council of Environmental Quality ("CEQ") within the Executive Office of the President and granted CEQ the authority to issue regulations effectuating NEPA.  CEQ regulations are "mandatory" for all federal agencies to follow and CEQ's interpretation of NEPA is entitled to "substantial deference."  *See Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 372 (1989); *see also* 40 C.F.R. § 1500, *et seq*.  In addition, agencies have promulgated their own NEPA regulations tailored to the agency functions at issue.  The regulations cited here are the FHWA's implementing NEPA regulations.  *See* 23 C.F.R. § 771, *et seq*.

[4] *Available at* https://www.environment.fhwa.dot.gov/legislation/nepa/reevaluation_guidance_08142019.pdf.

[a] Reevaluation [is] to determine whether . . . a [s]upplemental [NEPA review is] necessary." *South Trenton Residents Against 29 v. Fed. Highway Admin.*, 176 F.3d 658, 661 (3d Cir. 1999); *see also Citizens Advisory Comm. on Priv. Prisons, Inc. v. U.S. Dep't of Just.*, 197 F. Supp. 2d 226, 249 (W.D. Penn. 2001) (NEPA provisions "allowing supplemental documentation demonstrate that neither agencies nor information are perfect and, at times, corrections and reevaluations are needed."). A re-evaluation can occur at any point before the final federal approval for the project is issued, and the agency can consider new information or circumstances that occurred after the NEPA document was finalized. *See NEPA Re-Evaluation Joint Guidance*.

Finally, economic concerns are not within the scope of NEPA. *See Knowles v. U.S. Coast Guard*, 924 F. Supp. 593, 599 (S.D.N.Y. 1996) (explaining that, because "NEPA was enacted 'to promote efforts that will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man[,]' . . . [e]conomic injury . . . does not fall within NEPA's zone of interest." (citation omitted)); *see also Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 273 (D.C. Cir. 2015) ("[t]he zone of interests protected by the NEPA is, as its name implies, environmental; economic interests simply do not fall within that zone.").

## II.   Statutory Limitation on Time to Challenge Transportation Projects

First enacted in 2005, 23 U.S.C. § 139(l)(1) provides that "a claim arising under Federal law seeking judicial review of a permit, license, or approval issued by a Federal agency for a highway or public transportation capital project shall be barred unless it is filed within 150 days after publication of a notice in the Federal Register announcing that the permit, license, or approval is final pursuant to the law under which the agency action is taken."[5] *See also Yorkshire Towers,*

---

[5] Section 139(l) was first enacted with a 180-day time limitation as part of the "SAFETEA–LU Act," Pub. L. 109-59, 119 Stat. 1144 § 6002 (Aug. 10, 2005). The time limitation was later shortened to 150 days in the "FAST Act," Pub. L. 114-94, 129 Stat. 1312 § 1304 (Dec. 4, 2015).

*Co., L.P. v. U.S. Dep't of Transp.*, No. 11 Civ. 1058 (TPG), 2011 WL 6003959, at *3-*7 (S.D.N.Y. Dec. 1, 2011) (discussing application of § 139(l)(1) to a NEPA claim).

### III.   Factual Background

#### A.  Passage of the Traffic Mobility Act

The genesis of the Project was the passage of the New York Metropolitan Transportation Authority ("MTA") Reform and Traffic Mobility Act ("the Traffic Mobility Act" or "the Act") in April 2019, N.Y. Veh. & Traf. Law § 1701, as added by L 2019, ch. 59, part ZZZ (2019).[6]  The New York State legislature found that "traffic congestion in the city of New York ranks second worst among cities in the United States and third worst among cities in the world."  *Id*. at 2B-3. As a result, the state legislature determined that creation of a "program to establish tolls for vehicles entering or remaining in the most congested area of the state" was "necessary and a [] matter of substantial state concern."  *Id*.  The Act authorized the TBTA, an affiliate of the MTA, to establish a tolling program in the Manhattan Central Business District, with the twin goals of "reducing traffic congestion within the CBD and funding capital projects," with tolls set to, at a minimum, "provide for sufficient revenues . . . to fund [15] billion dollars for capital projects for the 2020 to 2024 MTA capital program . . . ."  *Id*. at 2B-7.  The Act also sets forth exemptions that must be included in the tolling program, such as that passenger vehicles may not be charged more than once per day, that emergency vehicles are exempt from tolling, and that the TBTA implement a plan for credits and exemptions for for-hire vehicles.  *Id*.

The Act also established the Traffic Mobility Review Board ("TMRB"), an affiliate of the TBTA, to "make a recommendation regarding the [CBD] toll amounts to be established," to be "submitted to the [TBTA] for consideration . . . ."  *Id*. at 2B-15.  The Act provides that the TMRB's

---

[6] *Available at* https://new.mta.info/document/110921.

recommendation should account for factors such as traffic patterns, traffic mitigation measures, operating costs, public impact, public safety, hardships, vehicle type, discounts for motorcycles, peak and off-peak rates and environmental impacts, including but not limited to air quality and emissions trends. *Id.*

### B. Development of the Final EA and FONSI

After passage of the Act, the Project Sponsors[7] submitted an expression of interest to the FHWA seeking approval of the Project under the federal Value Pricing Pilot Program ("VPPP").[8] The VPPP is a means by which the FHWA can "provide tolling authority to state, regional, or local governments to implement congestion pricing programs." Final EA at 0-2;[9] *see also* 23 U.S.C. § 149 note; Transportation Equity Act for the 21st Century, Pub. L. 105-178, § 1216(a), 112 Stat. 211 (Jun. 9, 1998). Review under NEPA is a precondition to finalizing a VPPP tolling agreement, Final EA at ES-4, and no tolls may be imposed until the VPPP agreement is finalized, *see* SAFETEA-LU Act, Pub. L. 109-59 § 1604(b)(3)(C), 119 Stat. at 1250.

The draft EA for the Project was published on July 29, 2022,[10] and the FHWA provided for public comment on the draft EA between August 10, 2022, and September 23, 2022. *See NYACP* Am. Compl. ¶ 90; *Mulgrew* Am. Compl. ¶ 92. In preparing the Final EA, the FHWA considered the "nearly 70,000 public input submissions on the [draft] EA," including "more than 14,000 individual submissions," "oral testimony at the public hearings, letters, e-mails, voicemails,

---

[7] The Project Sponsors are the MTA, the New York State Department of Transportation, and the New York City Department of Transportation.

[8] Title 23, United States Code, generally prohibits the imposition of tolls on Federal-aid highways. *See* 23 U.S.C. § 301. However, Congress has enacted tolling exceptions under various pilot programs. *See, e.g.,* 23 U.S.C. § 129. The VPPP is one such program. *See* SAFETEA-LU Act, Pub. L. 109-59 § 1604 (a), 119 Stat. 1249 (Aug. 10, 2005).

[9] *Available at* https://new.mta.info/document/111101.

[10] *See* https://new.mta.info/press-release/environmental-assessment-details-effects-of-proposed-congestion-pricing-program.

and submissions via an electronic form," and the Project Sponsors conducted six public hearings. Final EA at 18-21-22.

The Final EA was subsequently published on May 5, 2023.  It totals 958 pages with thousands of pages of appendices.  *See generally* Final EA.  The Final EA identified the following objectives for the Project: (1) "[r]educe daily vehicle-miles traveled (VMT) within the Manhattan CBD"; (2) "[r]educe the number of vehicles entering the Manhattan CBD daily"; (3) "[c]reate a funding source for capital improvements and generate sufficient annual net revenues to fund $15 billion for capital projects for the MTA capital program"; and (4) "[e]stablish a tolling program consistent with the purposes underlying the [Traffic Mobility Act]."  *Id*. at ES-7.

The Final EA explicitly accounted for the fact that the TBTA had not yet finalized a tolling schedule by analyzing a range of potential scenarios "with different attributes to identify the range of effects that may occur."  *Id*. at 2-11.  The scenarios "vary in their assumptions about [] factors, such as the amount of the toll for the different types of vehicles, the times tolls would be imposed, exemptions from tolling, crossing credits for tolls paid on other toll tunnels and bridges, and discounts in the form of 'caps' on the number of tolls per 24-hour period to be applied to different types of vehicles."  *Id*. at 2-30; *see also id*. at 2-31 (describing attributes of scenarios A–G).  For each resource area (*i.e.*, traffic, air quality, or environmental justice) the Final EA "describes the effects of the tolling scenario that would result in the greatest potential negative effects for that particular topic of analysis."  Final EA at 3-5.  "For example, the analysis of potential impacts on traffic intersection operations is based on the tolling scenario that would result in the greatest increase in vehicle volumes at the intersections in the study area."  *Id*.  Thus, the Final EA anticipates the "range of potential effects that could occur" from Project implementation.  *Id*.

Along with the Final EA, the FHWA published a draft FONSI on May 8, 2023, *NYACP* Am. Compl. ¶ 95, *Mulgrew* Am. Compl. ¶ 108, allowing for public comment between May 12, 2023, and June 12, 2023.[11]  The FHWA issued the Final FONSI on June 23, 2023, after determining that "no new substantive issues" were raised by any public submissions.  FONSI at 25.[12]  On June 28, 2023, notice was published in the Federal Register stating "that FHWA and other Federal agencies have taken final agency actions by issuing approvals for the [] highway project in the State of New York: Central Business District Tolling Program" and explaining that "subject to 23 U.S.C. 139(l)(1)[,] [a] claim seeking judicial review of the Federal agency actions . . . will be barred unless the claim is filed on or before November 27, 2023." 88 Fed. Reg. at 41,998; *see also* FONSI (providing notice that the FHWA could publish notice under Section 139(l)).

### C.  Re-evaluation Based on the Final Tolling Schedule

Consistent with the Traffic Mobility Act, on November 30, 2023, the TMRB released its recommendation for a final tolling schedule.  Compl. ¶ 85.[13]  Subsequently, the TBTA began a state administrative procedure to establish and adopt a toll schedule; that process includes the opportunity for the public to submit written comments as well as public hearings. *See* MTA, *How to Comment on the Proposed CBDTP Tolling Schedule* (Mar. 1, 2024), *available at* https://new.mta.info/agency/bridges-and-tunnels/cbd-tolling-hearing.  The public comment period ran from December 27, 2023 to March 11, 2024, and four public hearings were held between February 29 and March 4, 2024. *Id.*

---

[11]   *See*    https://apps.cio.ny.gov/apps/mediacontact/public/view.cfm?parm=9CC5FE4F-F476-DBF9-8AE2F84FB B494C17_6F3DC552-A1CD-952B-56D6159AC4DA3367.

[12] *Available at* https://new.mta.info/document/114186.

[13] *Available at* https://new.mta.info/document/127761.  The TMRB held three public meetings prior to releasing its recommendation.  *See* https://new.mta.info/project/CBDTP/traffic-mobility-review-board.

Once TBTA adopts a final tolling structure, the FONSI expressly contemplates that the Final EA and FONSI "will have to be re-evaluated to determine if the decision made in the FONSI is still valid."  FONSI at 26.  "This requires that the TBTA demonstrate to FHWA that the effects of the final tolling rates and structure are consistent with the effects disclosed in the Final EA and that the mitigation is still valid."  *Id.*  Again, tolls may not be charged under the Project until the Project Sponsors and the FHWA sign a VPPP agreement.  *See* SAFETEA-LU Act, Pub. L. 109-59 § 1604(b)(3)(C), 119 Stat. at 1250.  That agreement will not be signed until a tolling structure is finalized and any supplemental NEPA review is complete.

\* \* \*

For ease of reference, a timeline of the critical events to the development of the Final EA, the FONSI, and the Project is set forth below:

| **Date** | **Event** |
| --- | --- |
| July 29, 2022 | Draft EA published |
| August 10, 2022 to September 23, 2022 | Public comment period on the Draft EA |
| May 5, 2023 | Final EA published |
| May 8, 2023 | Draft FONSI published |
| May 12, 2023 to June 12, 2023 | Public comment period on the Draft FONSI |
| June 23, 2023 | Final FONSI published |
| June 28, 2023 | Notice of final agency action published |
| November 30, 2023 | TMRB proposes tolling structure |
| December 27, 2023 to March 11, 2024 | Public comment period on proposed tolling structure |
| Not yet occurred | Final tolling schedule adopted by TBTA |
| Not yet occurred | FHWA re-evaluation of Final EA and FONSI |
| Not yet occurred | VPPP agreement between the FHWA and Project Sponsors. |

The *Mulgrew* Plaintiffs filed their action challenging the FHWA's NEPA review on January 4, 2024.  The *NYACP* Plaintiffs filed their action on January 18, 2024.

## STANDARD OF REVIEW

In considering a motion to dismiss, a court must accept as true the well-pleaded factual allegations set forth in the complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  In addition, "on a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing the suit."  *Chambers v. Time Warner, Inc.*, 282 F.4d 147, 153 (2d Cir. 2002) (quotation marks and alterations omitted).[14]  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).[15]  Finally, because issues of ripeness implicate the Court's subject-matter jurisdiction, *see, e.g.*, *Village Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 293 (2d Cir. 2022), they are properly resolved on a motion to dismiss pursuant to Rule 12(b)(1).

---

[14] The Court may consider documents such as the Draft EA, the Final EA, the draft FONSI, and the FONSI both because they were relied upon in Plaintiffs' Amended Complaints and because they are judicially noticeably public documents.  *See, e.g. Croci v. Town of Haverstraw*, 175 F. Supp. 3d 373, 381 (S.D.N.Y. 2016) ("[Courts may take judicial notice upon a motion to dismiss of public documents in at least some circumstances.").

[15] The Government is not aware of precedent in this Circuit addressing whether a statute of limitations defense pursuant to 23 U.S.C. § 139(l) implicates the Court's subject-matter jurisdiction. *Cf. Highland Vill. Parents Grp. v. U.S. Fed. Highway Admin*., 562 F. Supp. 2d 857, 866 (E.D. Tex. 2008) (finding, where claim was time-barred under 23 U.S.C. § 139(l), that "[b]ecause this lawsuit is based on a Congressional waiver of sovereign immunity, this court's finding that the statute of limitations bars the Plaintiff's claims compels the conclusion that the court lacks subject matter jurisdiction.").  However, given Plaintiffs' claims here are facially untimely, the Court need not resolve whether § 139 is jurisdictional and may dismiss Plaintiffs' claims under Rule 12(b)(6).  *See Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.*, 289 F.R.D. 637, 644 n.6 (D. Or. 2013) (noting that "[w]hether this Court lacks subject-matter jurisdiction . . . does not affect my ultimate determination that [plaintiff's] claims are time-barred."); *see also Tahoe Cabin, LLC v. Fed. Highway Admin.*, No. 22 Civ. 175 (RCJ), 2023 WL 2021289, at *3-4 (D. Nev. Feb. 14, 2023) (construing motion to dismiss under Section 139(l) as one brought under Rule 12(b)(6)).

**ARGUMENT**

Count I of both the *Mulgrew* and *NYACP* Amended Complaints challenge the sufficiency of the FHWA's Final EA and FONSI. *See Mulgrew* Am. Compl. ¶¶ 145-151; *NYACP* Am. Compl. ¶¶ 164-168. Count II of both Amended Complaints challenge the FHWA's re-evaluation of those documents. *See Mulgrew* Am. Compl. ¶¶ 152-160; *NYACP* Am. Compl. ¶¶ 169-176. As set forth below, Count I of both complaints are time barred and Count II of both complaints are unripe. Each should accordingly be dismissed.

**I.      Plaintiffs' Challenge to the Final EA and FONSI is Time-Barred**

Plaintiffs' claims challenging the sufficiency of the Final EA and FONSI are time barred. *See Mulgrew* Am. Compl. ¶¶ 145-151; *NYACP* Am. Compl. ¶¶ 164-168. On June 28, 2023, notice was published in the Federal Register stating "that FHWA and other Federal agencies have taken final agency actions by issuing approvals for the [] highway project in the State of New York: Central Business District Tolling Program" and explaining that "subject to 23 U.S.C. 139(l)(1)[,] [a] claim seeking judicial review of the Federal agency actions . . . will be barred unless the claim is filed on or before November 27, 2023." 88 Fed. Reg. at 41,998; *see also* 23 U.S.C. § 139(l)(1) ("[A] claim arising under Federal law seeking judicial review of a permit, license, or approval issued by a Federal agency for a highway or public transportation capital project shall be barred unless it is filed within 150 days after publication of a notice in the Federal Register announcing that the permit, license, or approval is final pursuant to the law under which the agency action is taken.").

The *Mulgrew* and *NYACP* Plaintiffs did not file suit challenging the sufficiency of the Final EA and FONSI until January 4, 2024, and January 18, 2024, respectively. These suits fall outside the limitations period set in 23 U.S.C. § 139, and Plaintiffs' claims are thus time barred.

There is no question that the limitations period set by 23 U.S.C. § 139(l)(1) applies to Plaintiffs' claims challenging the sufficiency of the Final EA and FONSI; courts have consistently found that Section 139(l)'s statutory limitation bars untimely claims challenging environmental reviews of transportation projects. *See Yorkshire Towers, Co.,* 2011 WL 6003959, at \*5-6 (applying section 139 statute of limitations to bar challenge to the Federal Transit Administration's environmental review of MTA's Second Avenue subway project); *see also Tahoe Cabin LLC*, 2023 WL 2021289, at \*4 (D. Nev. Feb. 14, 2023) (applying section 139 to NEPA challenge related to construction of an access road); *Montlake Cmty. Club v. Mathis*, No. 17-1780, 2019 WL 3928732, at \*3 (W.D. Wash. Aug. 20, 2019) (plaintiffs could not contest "environmental impacts that were considered" in NEPA documents to which challenge was time barred); *Native Songbird Care and Conservation v. LaHood*, No. 13 Civ. 2265 (JST), 2013 WL 3355657, at \*5 (N.D. Cal. July 2, 2013) ("Both parties acknowledge that the limitations period to challenge the FEIS has passed."); *Highland Vill. Parents Grp.*, 562 F. Supp. 2d at 866 (applying 23 U.S.C. § 139 to NEPA claims). As in each of those cases, 23 U.S.C. § 139(l)(1) bars Plaintiffs' claims here regarding the Final EA and FONSI.

This filing limitation set forth in 23 U.S.C. § 139(l)(1) is strictly construed. *See Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.*, 289 F.R.D. 637, 643 (D. Or. 2013) (dismissing claims filed approximately eight weeks after the § 139(l) statute of limitations had run); *see also Citizens for Appropriate Rural Roads, Inc. v. Foxx*, No. 11-1031, 2015 WL 179571, at \*5 (S.D. Ind. Jan. 4, 2015) ("Although summary disposition of the claims on [the basis of § 139(l)(1)] may seem an exercise in formalism, the bounds of federal court jurisdiction are drawn with precision, and intentionally so."). Moreover, Plaintiffs' Amended Complaints provide no explanation for their delay in filing suit, particularly given that other lawsuits regarding the Project (including in this

district) were filed timely.  *See State of New Jersey v. U.S. Dep't of Transp., et al.*, No. 23 Civ. 3885 (LMG) (D.N.J.) (filed July 21, 2023); *Chan et al. v. U.S. Dep't of Transp., et al.*, No. 23 Civ. 10365 (LJL) (S.D.N.Y.) (filed November 22, 2023); *see also Yorkshire Towers Co.*, 2011 WL 6003959, at *5 ("[T]here is no allegation that plaintiffs did not know about the correct deadline to file their suit, nor that defendants made a false representation to plaintiffs about the deadline.").

Plaintiffs' allegations that the Final EA was issued prior to the completion of the state process for finalizing a tolling schedule do not alter the conclusion that their claims are time barred. *See*, *e.g.*, *NYACP* Am. Compl. ¶¶ 97-98.  Although the 23 U.S.C. § 139(l) time bar contemplates situations in which the agency receives "new information" after a federal decision is made, *see id.* § 139(l)(2), that provision only allows parties to challenge an agency's failure to supplement an EIS, rather than reviving an untimely challenge to the original review.  *See Native Songbird*, 2013 WL 3355657, at *5 (applying § 139(l)(2) and explaining "that, independent of the requirements to prepare a" supplemental analysis, plaintiffs did not "have the ability, years after the limitations period expired, to challenge the FEIS itself.").  That is because "an agency [may] complete[] a programmatic" review and perform "additional assessment [] where localized environmental effects have not been fully evaluated in the programmatic statement." *Vt. Pub. Interest Research Grp. v. U.S. Fish & Wildlife Serv.*, 247 F. Supp. 2d 495, 528 (D. Vt. 2002).  Accordingly, while the Federal Defendants do not contend that Plaintiffs' failure-to-supplement claims are time barred (instead, they are unripe), their challenges to the sufficiency of the Final EA and FONSI are, and should therefore be dismissed.

## II.   Plaintiffs' Challenge to the FHWA's Forthcoming Re-evaluation is Unripe

Plaintiffs' challenges to the FHWA's re-evaluation of its environmental review suffer from a different justiciability problem.  The FHWA's re-evaluation, while contemplated by its FONSI,

has not yet occurred, and indeed cannot occur until the TBTA finalizes a tolling schedule. Plaintiffs' failure-to-supplement claims (Counts II) are therefore unripe and must be dismissed. *See, e.g.*, *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) ("Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized . . . .'" (citation omitted)).

More specifically, Plaintiffs challenges to the FHWA's forthcoming re-evaluation (*see Mulgrew* Am. Compl. ¶¶ 152-160; *NYACP* Am. Compl. ¶¶ 169-176) cannot be adjudicated as that re-evaluation has not yet occurred, such that its scope and substance is not yet known. The FHWA clearly explained in the FONSI that "[t]he adopted TBTA toll rates and structures will have to be re-evaluated to determine if the decision made in the FONSI is still valid." FONSI at 26. As the FHWA explained, "[t]his [will] require[] that the TBTA demonstrate to [the] FHWA that the effects of the final tolling rates and structure are consistent with the effects disclosed in the Final EA and that the mitigation is still valid." *Id.* Courts routinely dismiss as unripe challenges to agency actions that have not yet occurred. *See, e.g.*, *Jurist v. Long Island Power Auth.*, 538 F. Supp. 3d 254, 267 (E.D.N.Y. 2021), *aff'd Powers v. Long Island Power Auth.*, No. 21-1755, 2022 WL 3147780 (2d Cir. Aug. 8, 2022) (Because agency "will need to conduct a review of their plans[,] . . . the plans Plaintiff challenges are too speculative for this Court to review, and Plaintiffs' challenge, which is based on their expectations about [the agency's] future involvement, is unripe."); *see also Norton v. Fed. Highway Admin.*, No. 01 Civ. 891, 2002 WL 31017416, at *2 (W.D.N.Y. Aug. 8, 2002) ("Inasmuch as defendants have no duty, at this time, to . . . prepare a[] [supplement] – this action is not yet ripe for judicial review because there presently is no violation

of NEPA or of its related regulations."); *Native Songbird*, 2013 WL 3355657 at *6 (when . . . the agency has yet to issue a [supplemental analysis] or any other written evaluation of the new information[,] [t]here has been no 'final agency action.'");

It is premature for Plaintiffs to argue that the FHWA's re-evaluation of the final tolling schedule is inadequate until that analysis is complete in the first instance.  Said differently, at present, the TBTA has not yet adopted a final tolling schedule and so the FHWA does not yet have anything to re-evaluate.  Once the schedule is finalized the FHWA must make a re-evaluation determination before the Court may assess its sufficiency.  *See N. Idaho Cmty. Action Net. v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1154-55 (9th Cir. 2008) (explaining that the "[FHWA] had specifically provided for reevaluations as a means to determine whether or not the approved environmental document remains valid" and "conclud[ing] that if the agency, after the requisite 'hard look' in a reevaluation, determines that the new impacts will not be significant (or not significantly different from those already considered), then the agency is in full compliance with NEPA and is not required to conduct a supplemental EA"); *Norton*, 2002 WL 31017416, at *2 ("Although [a supplemental NEPA analysis] may be required – that determination is properly within the discretion of the FHWA rather than this Court."); *see also NEPA Re-Evaluation Joint Guidance* at 1 ("If the Agency determines, based on the re-evaluation, there are changes that make the existing environmental document or decision no longer valid for Agency decisionmaking, the Agency will decide the nature and scope of the supplemental analysis and documentation needed.").  Plaintiffs' argument would improperly prejudge that review, and deprive the FHWA of the opportunity to compare the TBTA's final tolling schedule to the analysis in the Final EA.  *See Dine Citizens Against Ruining Our Env't v. Klein*, 676 F. Supp. 2d 1198, 1215 (D. Colo. 2009) (finding "supplementation claim with respect to these two [ongoing] actions is not ripe"); *see also*

*Native Songbird*, 2013 WL 3355657 at *7 ("the agency does not 'unlawfully withhold' its determination if it has not yet had time to prepare it").

In sum, until FHWA completes its re-evaluation, there is no agency decision that Plaintiffs may claim is contrary to 23 C.F.R. § 771.129.[16]

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaints.

Dated: March 18, 2024
      New York, New York

<div style="margin-left:40%">

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:   /s/ Zachary Bannon____
     ZACHARY BANNON
     Assistant United States Attorneys
     86 Chambers Street, Third Floor
     New York, New York 10007
     Tel.: (212) 637-2728

</div>

OF COUNSEL:

GREGORY M. CUMMING
SAMANTHA G. PELTZ
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
150 M St., N.E.
Washington, D.C. 20002
(202) 305-0457 (phone)
gregory.cumming@usdoj.gov

---

[16] Even issuance of the re-evaluation would not ripen the claim alleged by Plaintiffs in their Amended Complaints. Instead, "premature suits for review of agency decisions must be dismissed even when the passage of time supplies the item missing at the time of filing—here, an agency decision." *Pub. Citizen v. Nuclear Regulatory Comm'n*, 845 F.2d 1105, 1107 (D.C. Cir. 1988).