**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MICHAEL MULGREW, *et al.*,

                              *Plaintiffs*,

        v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

                              *Defendants*.

---

NEW YORKERS AGAINST
CONGESTION PRICING TAX, *et al.*,

                              *Plaintiffs*,

        v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

                              *Defendants*.

Case No. 1:24-cv-01644-LJL
Case No. 1:24-cv-00367-LJL

---

**DEFENDANTS THE METROPOLITAN TRANSPORTATION AUTHORITY, THE
NEW YORK CITY DEPARTMENT OF TRANSPORTATION, THE TRAFFIC
MOBILITY REVIEW BOARD, AND THE TRIBOROUGH BRIDGE AND TUNNEL
AUTHORITY'S MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION
TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 2

STANDARD OF REVIEW .................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

    I.   The NEPA Claims in *Mulgrew* and *New Yorkers* Should Be Dismissed ........................ 7

       A. Plaintiffs' Challenges to the Final EA and FONSI Are Time-Barred ......................... 7

       B. Plaintiffs in *New Yorkers* Seek Relief Unavailable Under NEPA ............................. 8

    II.  The SAPA Claim in *New Yorkers* Should Be Dismissed ................................................. 9

       A. The SAPA Claim Is Not Ripe ...................................................................... 10

         1.   The SAPA Claim Is Not Fit for Judicial Decision .................................................. 10

         2.   There Would Be No Hardship to the Parties of Withholding Court Consideration 12

       B. The SAPA Claim Fails as a Matter of Law ................................................................. 12

         1.   The SAPA Rulemaking Framework ........................................................................ 12

         2.   The SAPA Claim Fails Because This Is a Type (ii) Rule ........................................ 13

    III.  TMRB Cannot Be Held Liable Under NEPA and SAPA ............................................. 17

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                   **Page(s)**

*Air Espana v. Brien*,
165 F.3d 148 (2d Cir. 1999) .................................................................................. 12

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) .................................................................................... 6

*Arab v. Blinken*,
600 F. Supp. 3d 59 (D.D.C. 2022) ......................................................................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 6

*Bruce Katz, M.D., P.C. v. Focus Forward, LLC*,
22 F.4th 368 (2d Cir. 2022) ..................................................................................... 6

*Carey Transp., Inc. v. Triborough Bridge & Tunnel Auth.*,
38 N.Y.2d 545 (1976) ............................................................................................ 15

*City of New York v. N.Y. Pub. Serv. Comm'n*,
105 A.D.3d 1200 (3d Dep't 2013) ......................................................................... 11

*Const. Pipeline Co., LLC v. N.Y. State Dep't of Env't Conservation*,
868 F.3d 87 (2d Cir. 2017) ...................................................................................... 9

*D'Angelo v. Triborough Bridge & Tunnel Auth.*,
106 A.D.2d 128 (1st Dep't 1985) .......................................................................... 15

*Dep't of Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999) ................................................................................................. 9

*Dep't of Pers. of N.Y.C. v. N.Y.C. Civil Serv. Comm'n*,
79 N.Y.2d 806 (1991) ...................................................................................... 16, 17

*Essex Cnty. v. Zagata*,
91 N.Y.2d 447 (1998) ............................................................................................ 11

*Fed'n of Mental Health Ctrs., Inc. v. DeBuono*,
275 A.D.2d 557 (3d Dep't 2000) ........................................................................... 11

*Friends of Cap. Crescent Trail v. Fed. Transit Admin.*,
No. 17 Civ. 1811, 2019 WL 1046889 (D.D.C. Mar. 5, 2019) .................................................. 8

*Gordon v. Rush*,
100 N.Y.2d 236 (2003) ............................................................................................................... 11

*Highland Vill. Parents Grp. v. U.S. Fed. Highway Admin.*,
562 F. Supp. 2d 857 (E.D. Tex. 2008) ....................................................................................... 8

*Hudson River Sloop Clearwater v. N.Y. State Public Serv. Comm'n*,
No. 7242-16, 2019 WL 5583492 (Sup. Ct. Albany Cnty. 2019) ........................................... 13

*Iazzetti v. City of New York*,
94 N.Y.2d 183 (1999) ................................................................................................................. 14

*Janes v. Triborough Bridge & Tunnel Auth.*,
997 F. Supp. 2d 320 (S.D.N.Y. 2013) ....................................................................................... 15

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013) ........................................................................................................ 6

*Lacewell v. Off. of Comptroller of Currency*,
999 F.3d 130 (2d Cir. 2021) ...................................................................................................... 10

*Manchanda v. Lewis*,
No. 21-1088, 2021 WL 5986877 (2d Cir. Dec. 17, 2021) ....................................................... 12

*Matter of Lisa T. v. King E.T.*,
30 N.Y.3d 548 (2017) ................................................................................................................. 14

*McBeth v. Porges*,
171 F. Supp. 3d 216 (S.D.N.Y. 2016) ......................................................................................... 6

*Mental Hygiene Legal Serv. v. Sullivan*,
32 N.Y.3d 652 (2019) ................................................................................................................. 17

*Molinari v. N.Y. Triborough Bridge & Tunnel Auth.*,
838 F. Supp. 718 (E.D.N.Y. 1993) ............................................................................................ 15

*N.Y. Immigr. Coal. v. U.S. Dep't of Com.*,
No. 18 Civ. 5025, 2018 WL 4292673 (S.D.N.Y. Sept. 7, 2018) ............................................ 17

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ............................................................................................................. 10, 12

*Nevada v. Dep't of Energy,*
    457 F.3d 78 (D.C. Cir. 2006) ............................................................................ 11

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
    523 U.S. 726 (1998) ......................................................................................... 12

*People v. Walters,*
    913 N.Y.S.2d 893 (City Ct. 2010) .................................................................... 10

*Ranco Sand & Stone Corp. v. Vecchio,*
    27 N.Y.3d 92 (2016) ......................................................................................... 11

*Robertson v. Methow Valley Citizens Council,*
    490 U.S. 332 (1989) ........................................................................................... 9

*Sharkey v. Quarantillo,*
    541 F.3d 75 (2d Cir. 2008) ............................................................................... 12

*Sherwood v. Tenn. Valley Auth.,*
    No. 12 Civ. 156, 2017 WL 3261769 (E.D. Tenn. July 31, 2017) ....................... 9

*Simmonds v. INS,*
    326 F.3d 351 (2d Cir. 2003) ............................................................................. 12

*Symotyuk-Knoll v. HealthEquity, Inc.,*
    No. 21 Civ. 8348, 2023 WL 5576405 (S.D.N.Y. Aug. 29, 2023) ......................... 6

*Theodore Roosevelt Conservation P'ship v. Salazar,*
    616 F.3d 497 (D.C. Cir. 2010) ............................................................................ 9

*Vt. Pub. Int. Rsch. Grp. v. U.S. Fish & Wildlife Serv.,*
    247 F. Supp. 2d 495 (D. Vt. 2002) ..................................................................... 9

*Walsh v. N.Y. State Comptroller,*
    34 N.Y.3d 520 (2019) ...................................................................................... 14

*Yorkshire Towers Co., L.P. v. U.S. Dep't of Transp.,*
    No. 11 Civ. 1058, 2011 WL 6003959 (S.D.N.Y. Dec. 1, 2011) ......................... 8

**STATUTES**

23 U.S.C. § 139 .................................................................................................... 4, 7

42 U.S.C. § 4321 ..................................................................................................... 3

Further Consolidated Appropriations Act, 2020,

Pub. L. No. 116-94, 133 Stat. 2534 (2019) ............................................................ 15

N.Y. C.P.L.R. § 7801 ........................................................................................... 10, 13

N.Y. Pub. Auth. Law § 553-k .............................................................................. 18, 18

N.Y. Stat. Law § 234 .................................................................................................. 14

N.Y. Stat. Law § 238 .................................................................................................. 14

N.Y. State Administrative Procedure Act § 102 ............................ 13, 14, 15, 16, 17

N.Y. State Administrative Procedure Act § 201-a ..................................................... 13

N.Y. State Administrative Procedure Act § 202 ........................................................ 10

N.Y. State Administrative Procedure Act § 202-b .................................................... 13

N.Y. State Administrative Procedure Act § 205 ........................................................ 10

N.Y. Veh. & Traf. Law § 1701 ................................................................................. 2, 3

N.Y. Veh. & Traf. Law § 1704 ........................................................................ 3, 17, 18

## REGULATIONS

23 C.F.R. § 771.01 ........................................................................................................ 3

40 C.F.R. § 1500.1 ........................................................................................................ 3

40 C.F.R. § 1501 ........................................................................................................ 3, 4

88 Fed. Reg. 41998 (June 28, 2023) ............................................................................ 4

30 N.Y. Reg. 2 (Jan. 9, 2008) .................................................................................... 16

31 N.Y. Reg. 34 (Aug. 26, 2009) ............................................................................... 16

31 N.Y. Reg. 15 (Apr. 15, 2009) ............................................................................... 16

32 N.Y. Reg. 46 (Nov. 17, 2010) ............................................................................... 16

35 N.Y. Reg. 2 (Jan. 9, 2013) .................................................................................... 16

37 N.Y. Reg. 9 (Mar. 4, 2015) ................................................................................... 16

39 N.Y. Reg. 11 (Mar. 15, 2017) ............................................................................... 16

41 N.Y. Reg. 12 (Mar. 20, 2019) ................................................................................ 16

42 N.Y. Reg. 26 (July 1, 2020) .................................................................................. 15

43 N.Y. Reg. 10 (Mar. 10, 2021) ................................................................................ 16

45 N.Y. Reg. 32 (Aug. 9, 2023) ................................................................................. 16

45 N.Y. Reg. 52 (Dec. 27, 2023) ....................................................................... 5, 13, 14

21 N.Y.C.R.R. § 1021.1 ........................................................................................ 15, 16

**RULE**

Federal Rule of Civil Procedure 12 ................................................................. 2, 6, 12, 17

**OTHER AUTHORITIES**

*Central Business District (CBD) Tolling Program: Final Environmental Assessment* (April 2023) https://new.mta.info/document/111101 ........................................................... 2, 4

*Central Business District (CBD) Tolling Program: Finding of No Significant Impact* (June 2023) https://new.mta.info/document/114186 .......................................................... 2, 5

*Congestion Pricing in New York: A toll structure recommendation from the Traffic Mobility Review Board* (November 2023) https://new.mta.info/document/127761 ............................ 5

N.Y. Const. Art. IV, § 8 ............................................................................................. 10

## PRELIMINARY STATEMENT

New York is nearing fruition of a groundbreaking congestion pricing program (the "Project") in the Central Business District (the "CBD") of Manhattan, generally defined as the area below and inclusive of 60th Street—the most congested area in the nation. The Project is the culmination of a decades-long effort among environmental, planning, and other entities to address the significant harms that result from congestion, including increased air and noise pollution, lost productivity, and delayed emergency response times. The Project will also secure much-needed funding to improve the region's public transportation system, which will, in turn, not only benefit all commuters and other users, but also boost the region's economy.

Not surprisingly, a flurry of lawsuits has been brought to enjoin and otherwise challenge the Project. Here, Plaintiffs in *Mulgrew*[1] and *New Yorkers*[2] assert that the Project violates various state and federal requirements. This motion addresses two of their claims—one of which was filed too late (and is therefore time-barred) and the other of which was filed too early (and is therefore unripe).

The first claim at issue on this motion, which is asserted in both actions, arises under the National Environmental Policy Act ("NEPA"). By this claim, Plaintiffs challenge the adequacy of an Environmental Assessment ("EA") issued by the Federal Highway Administration ("FHWA") as a prerequisite to federal approval for the Project. They also contest FHWA's subsequent Finding of No Significant Impact ("FONSI") based upon that EA. These contentions are time-barred because they were filed after the limitations period. Moreover, Plaintiffs in *New Yorkers* seek a form of relief that the law does not provide.

---

[1] "*Mulgrew*" refers to *Mulgrew v. U.S. Department of Transportation*, No. 24 Civ. 1644 (S.D.N.Y.).

[2] "*New Yorkers*" refers to *New Yorkers Against Congestion Pricing Tax v. U.S. Department of Transportation*, No. 24 Civ. 367 (S.D.N.Y.).

The second claim, alleged only in the *New Yorkers* action, arises under New York's State Administrative Procedure Act ("SAPA"). In essence, Plaintiffs allege that an ongoing state agency ratemaking process concerning the Project's toll rate schedule violates SAPA. But this claim is doubly flawed: it is not yet ripe for review; and it is defective on the merits under state law.

Finally, although Plaintiffs in *New Yorkers* have sued the Traffic Mobility Review Board ("TMRB"), TMRB is an improper defendant because it plays no role applicable to their NEPA or SAPA claims.

For these reasons, as explained further below, Plaintiffs' NEPA and SAPA claims should be dismissed as a matter of law under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND[3]

The CBD is the most congested area of one of the nation's most congested cities. Final EA at 47, 93, 104. In 2019, an estimated 1,856,000 people entered and exited the CBD by vehicle every day, crowding already congested streets and reducing travel speeds to around seven miles an hour on average. *Id.* at 104-05. Drivers today lose 102 hours annually to congestion, costing nearly $1,600 per driver per year. *Id.* at 104. Congestion obviously also harms the health and quality of life of all who live and work in the CBD. *Id.* at 113.

New York has long debated how to reduce congestion in Manhattan. On April 1, 2019, the Legislature enacted the MTA Reform and Traffic Mobility Act (the "Act") as the solution. *See* N.Y. Veh. & Traf. Law § 1701; *Mulgrew* ¶¶ 77-78; *New Yorkers* ¶ 73. The Act seeks to remedy pervasive traffic congestion in Manhattan and to create a dedicated funding source for

---

[3] Citations to "*Mulgrew* ¶ __" are to the amended complaint in *Mulgrew*, ECF 19; to "*New Yorkers* ¶ __" are to the amended complaint in *New Yorkers*, ECF 51; to "Final EA at __" are to the PDF pages of the Final Environmental Assessment published by FHWA and available at https://new.mta.info/document/111101; and to "Final FONSI at __" are to the PDF pages of the Final Finding of No Significant Impact published by FHWA and available at https://new.mta.info/document/114186.

improvements to the region's public transportation system. *See id*. Through the Act, the Legislature recognized that congestion in New York City results in a significant cost to the region's economy and degrades air quality. N.Y. Veh. & Traf. Law § 1701. The Legislature also found that Defendant Metropolitan Transportation Authority's ("MTA's") funding shortfalls adversely affect the health, safety, and livelihoods of commuters, tourists, and residents, as well as business and commerce in the metropolitan region. *Id.* As a result, the Legislature authorized an affiliate entity of MTA—Defendant Triborough Bridge and Tunnel Authority ("TBTA")—to establish and implement a plan for tolling vehicles that enter or remain in the CBD. N.Y. Veh. & Traf. Law § 1704-a; *Mulgrew* ¶ 79; *New Yorkers* ¶ 73.[4]

In June 2019, an Expression of Interest was submitted to FHWA for tolling authority under the Value Pricing Pilot Program ("VPPP"). *Mulgrew* ¶ 82; *New Yorkers* ¶¶ 65, 126. From there, FHWA needed to evaluate the potential environmental effects of the proposal before it could authorize the Project. *Mulgrew* ¶¶ 63, 72; *New Yorkers* ¶¶ 65, 125; *see also* 42 U.S.C. § 4321 *et seq.*; 40 C.F.R. § 1500.1 *et seq.*; 23 C.F.R. § 771.01 *et seq.* In early 2021, after an initial assessment, FHWA determined that the Project should be treated as a NEPA Class III action. *Mulgrew* ¶ 88; *New Yorkers* ¶ 87.

FHWA's classification affected the kind of environmental analysis required by federal law. NEPA Class III actions involve the preparation of an EA to determine whether a project is likely to have a significant impact on the human and natural environment. 40 C.F.R. §§ 1501.3, 1501.5, 1501.6. If an EA concludes a project will have an unmitigated significant impact, an Environmental Impact Statement ("EIS") is necessary. *Id.* § 1501.3(a)(3). However, if no

---

[4] As delineated by the Act, the CBD encompasses the geographic area of Manhattan south and inclusive of 60th Street, but not including the FDR Drive, the West Side Highway, the Battery Park Underpass, and any surface roadway portion of the Hugh L. Carey Tunnel connecting to West Street. N.Y. Veh. & Traf. Law § 1704(2).

significant impact is found, or if any impacts would be mitigated to less than significant levels, the agency may issue a FONSI and the project may proceed without an EIS. *Id.* § 1501.6.

Here, consistent with FHWA's classification of the project as a NEPA Class III action, the Project Sponsors engaged in an extensive EA,[5] which found that the Project will not have a significant environmental impact. *See* Final EA at 3, 5; *see also Mulgrew* ¶¶ 89, 92; *New Yorkers* ¶¶ 88-92. FHWA and the Project Sponsors issued a Draft EA evaluating the potential environmental impacts of the Project; this was released for public review and comment in August 2022. *Mulgrew* ¶¶ 89-93; *New Yorkers* ¶¶ 88-91; Final EA at 5-6. Nine months later, after that comment period and preparing responses to each of the tens of thousands of comments received, FHWA and the Project Sponsors issued a Final EA. *Mulgrew* ¶ 105; *New Yorkers* ¶ 92; Final EA at 1, 6.

In May 2023, FHWA issued a Draft FONSI based on and alongside the Final EA. *Mulgrew* ¶¶ 108, 110-11; *New Yorkers* ¶¶ 92, 95, 97; Final EA at 3. Following a 30-day period for public review, FHWA issued a Final FONSI on June 23, 2023. *Id.* Five days later, FHWA published a "Notice of Final Federal Agency Actions on the Central Business District Tolling Program, New York, New York," which pertained to the Final EA and FONSI and provided notice that, pursuant to 23 U.S.C. § 139(l)(1), "[a] claim seeking judicial review of the Federal agency actions … will be barred unless the claim is filed on or before November 27, 2023." 88 Fed. Reg. 41,998 (June 28, 2023). The publication of the Final FONSI concluded FHWA's thorough, four-year long process designed to ensure compliance with NEPA.

---

[5] The Project Sponsors are TBTA, the New York State Department of Transportation ("NYSDOT"), and the New York City Department of Transportation ("NYCDOT"). *See Mulgrew* ¶¶ 20, 67-69; *New Yorkers* ¶¶ 69-71, 123.

However, the issuance of the Final EA and FONSI still did not mark the beginning of the Project. Significant steps remained before the Project could be operationalized. *See Mulgrew* ¶¶ 112-31; *New Yorkers* ¶¶ 98-109. Some of those steps have already occurred. For example, TMRB—an independent advisory body—has recommended a toll rate schedule to the TBTA Board. *Mulgrew* ¶ 115; *New Yorkers* ¶ 172. The TBTA Board, in turn, has voted to authorize TBTA staff to file a notice of proposed ratemaking for subsequent adoption of the toll rate schedule recommended by TMRB, and that notice was published in December 2023. *Mulgrew* ¶¶ 128-29; *New Yorkers* ¶¶ 100, 103-05; 45 N.Y. Reg. 52 at 46-48 (Dec. 27, 2023).[6] TBTA has also held public hearings on the proposed toll rate schedule, and it received comments through March 11, 2024. *New Yorkers* ¶¶ 103-04. Notwithstanding this progress since the end of FHWA's evaluation, crucial steps remain outstanding before the Project is finalized and put into effect. To list just a few of those outstanding steps: (1) the TBTA Board must vote to adopt a CBD toll rate schedule; (2) FHWA must reevaluate that tolling structure to determine whether the Final FONSI remains valid or whether a supplemental environmental analysis is necessary; (3) FHWA and the Project Sponsors must execute a tolling agreement under the VPPP; and (4) the Project must be operationalized. *See Mulgrew* ¶¶ 8, 15, 113; *New Yorkers* ¶¶ 99, 105-09; Final FONSI at 33-34.

In January 2024—prior to TBTA's public hearings on the proposed CBD toll rate schedule—the plaintiffs in *Mulgrew* and *New Yorkers* filed these lawsuits. Both cases raise a variety of state and federal challenges to the Project. *Mulgrew* ¶¶ 145-84; *New Yorkers* ¶¶ 164-89. Pursuant to the staged briefing schedule adopted by the Court, *see New Yorkers*, ECF 56 at 1-3, this motion to dismiss addresses two sets of claims: (1) the NEPA claims in *Mulgrew* and *New*

---

[6] TMRB's recommendation is available at https://new.mta.info/document/127761.

*Yorkers* challenging the adequacy of the Final EA and FONSI; and (2) the claim in *New Yorkers* that TBTA has failed to comply with SAPA.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor," *Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 370 (2d Cir. 2022), it should not credit either "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a motion to dismiss, the Court may consider "documents attached to the complaint; statements or documents incorporated into the complaint by reference; matters of which judicial notice may be taken, such as public records; and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit." *McBeth v. Porges*, 171 F. Supp. 3d 216, 221 (S.D.N.Y. 2016) (Furman, J.); *accord, e.g.*, *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013).

"The standard of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical." *Symotyuk-Knoll v. HealthEquity, Inc.*, No. 21 Civ. 8348, 2023 WL 5576405, at *2 (S.D.N.Y. Aug. 29, 2023) (Carter, J.). Consistent with that principle, a court deciding a Rule 12(b)(1) motion "need not credit a complaint's conclusory statements without reference to its factual context." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011).

**ARGUMENT**

**I.     The NEPA Claims in *Mulgrew* and *New Yorkers* Should Be Dismissed**

The NEPA claims advanced in both actions ask this Court to set aside the Final EA and FONSI—and to require the preparation of an EIS based on supposed NEPA violations committed during the EA process. *Mulgrew* ¶¶ 145-51, at 58; *New Yorkers* ¶¶ 164-68, at 56. But those claims are untimely: they were both filed well after the 150-day limitations period. For that reason alone, the NEPA claims fail. Alternatively, the NEPA claim in *New Yorkers* should be dismissed in part because the requested remedy (health monitoring) is unavailable under settled precedent.

**A.     Plaintiffs' Challenges to the Final EA and FONSI Are Time-Barred**

Plaintiffs had to seek judicial review of the Final EA and FONSI "within 150 days after publication of a notice in the Federal Register." 23 U.S.C. § 139(l)(1).[7] Here, FHWA published the relevant notice in the Federal Register on June 28, 2023—and, in so doing, identified the final environmental review documents as "approvals" subject to § 139(l)(1). 88 Fed. Reg. at 41,998 ("FHWA and other Federal agencies have taken final agency actions by issuing *approvals* for the … Central Business District Tolling Program." (emphasis added)). Even more pointedly, the notice identified the date by which any challenges had to be filed: "[S]ubject to 23 U.S.C. 139(l)(1)[,] [a] claim seeking judicial review of the Federal agency actions … will be barred unless the claim is filed on or before November 27, 2023." *Id.*

---

[7] In full, this statutory provision, in a section entitled "Efficient environmental reviews for project decisionmaking …," provides as follows: "Notwithstanding any other provision of law, a claim arising under Federal law seeking judicial review of a permit, license, or approval issued by a Federal agency for a highway or public transportation capital project shall be barred unless it is filed within 150 days after publication of a notice in the Federal Register announcing that the permit, license, or approval is final pursuant to the law under which the agency action is taken, unless a shorter time is specified in the Federal law pursuant to which judicial review is allowed. Nothing in this subsection shall create a right to judicial review or place any limit on filing a claim that a person has violated the terms of a permit, license, or approval." 23 U.S.C. § 139(l)(1).

Despite that clear direction, the *Mulgrew* and *New Yorkers* cases were not filed until January 4, 2024, and January 18, 2024, respectively. *See Mulgrew*, ECF 1; *New Yorkers*, ECF 1. Neither complaint purports to allege any excuse for failing to comply with the statutory limitations period set forth in § 139(l)(1). Accordingly, Plaintiffs' NEPA challenges to the adequacy of the Final EA and FONSI are time-barred. *See, e.g.*, *Friends of Cap. Crescent Trail v. Fed. Transit Admin.*, No. 17 Civ. 1811, 2019 WL 1046889, at *8-9 (D.D.C. Mar. 5, 2019) (challenge to an interim environmental approval held untimely, as brought more than 150 days after the § 139(l)(1) Federal Register notice); *see also Yorkshire Towers Co., L.P. v. U.S. Dep't of Transp.*, No. 11 Civ. 1058, 2011 WL 6003959, at *6 (S.D.N.Y. Dec. 1, 2011) (Griesa, J.); *Highland Vill. Parents Grp. v. U.S. Fed. Highway Admin.*, 562 F. Supp. 2d 857, 863 (E.D. Tex. 2008).

## B.    Plaintiffs in *New Yorkers* Seek Relief Unavailable Under NEPA

In the *New Yorkers* case, Plaintiffs not only failed to comply with the statutory time bar, but they also seek relief that is unavailable as a matter of law. For that reason, if their NEPA claim is found to be timely (which it should not be), it nonetheless fails to the extent it seeks such relief.

Admittedly, the relief sought in *New Yorkers* is not a model of clarity. In Court on February 12th, Plaintiffs initially stated that their class action potentially sought "monetary damages that would … apply to the class." Ex. A ("Tr.") at 17:13-14. After the Court responded that it did not "see in [the] complaint a request for monetary damages," Plaintiffs then stated, "we request certain monitoring that should occur and that could be unique to each community," and "in order to accomplish monitoring … some appropriation of funds" would be required. *Id.* at 17:17-18:2; *New Yorkers* ¶ 184 ("The putative class seeks the performance of an EIS establishing proper health monitoring."). Plaintiffs later confirmed that they were not "seeking monetary relief on behalf of members of the class." Tr. 18:5-9. Plaintiffs' Amended Complaint does not offer any additional clarity.

To the extent that Plaintiffs rely on NEPA to seek monitoring, their claim must fail for the simple reason that NEPA cannot provide it. Because NEPA is an information-forcing statute, it does not impose substantive requirements on agencies. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350-53 (1989) ("NEPA itself does not mandate particular results."); *Const. Pipeline Co., LLC v. N.Y. State Dep't of Env't Conservation*, 868 F.3d 87, 100 (2d Cir. 2017). Courts therefore cannot invent such requirements in awarding relief in suits seeking to enforce NEPA by way of the Administrative Procedure Act ("APA"). *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 262-63 (1999). Here, Plaintiffs either request damages outright, Tr. 17:13-18:9, or an injunction requiring a specific kind of mitigation in the form of class-wide "health monitoring," *New Yorkers* ¶ 184. But because no plaintiff is entitled to a specific form of mitigation under NEPA, this Court cannot enter an injunction granting Plaintiffs the mitigation efforts they seek. *See, e.g.*, *Sherwood v. Tenn. Valley Auth.*, No. 12 Civ. 156, 2017 WL 3261769, at *4 (E.D. Tenn. July 31, 2017) (dismissing claim because proposed relief "extend[ed] beyond what NEPA itself and its implementing regulations require[d]"); *see also Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 503, 516-517 (D.C. Cir. 2010); *Vt. Pub. Int. Rsch. Grp. v. U.S. Fish & Wildlife Serv.*, 247 F. Supp. 2d 495, 524-25 (D. Vt. 2002).

## II.   The SAPA Claim in *New Yorkers* Should Be Dismissed

In *New Yorkers*, Plaintiffs also allege a claim under SAPA. *New Yorkers* ¶¶ 177-79. Specifically, they seek to vacate TBTA's ongoing ratemaking as arbitrary and capricious for failing to assess socioeconomic impacts of the Project on small businesses and jobs—and they seek an injunction mandating that assessment. *Id.* This claim is doubly flawed: (1) it is unripe because the challenged ratemaking is still on-going; and (2) the claim fails on the merits in any

event because TBTA has properly complied with the requirements of SAPA throughout the ratemaking process.

### A.     The SAPA Claim Is Not Ripe

Most fundamentally, this Court lacks jurisdiction over the SAPA claim because it is unripe. The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 148 (2d Cir. 2021) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003)). In assessing ripeness, courts "evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808. Here, both factors cut strongly against exercising jurisdiction.

### 1.     The SAPA Claim Is Not Fit for Judicial Decision

The SAPA claim in *New Yorkers* is not yet fit for judicial decision. SAPA provides for judicial review of agency "rules." SAPA § 205. However, judicial proceedings that seek to "contest a rule on the grounds of noncompliance with [SAPA's] procedural requirements" cannot be brought until *after* the rule is "effective." *Id.* § 202(8). And under SAPA, a rule is effective only after the adopted rule and notice of its adoption have been filed with the Secretary of State. SAPA § 202(5)(a); *People v. Walters*, 913 N.Y.S.2d 893, 900 (City Ct. 2010) (citing N.Y. Const. Art. IV, § 8). Under that definition, here, no "effective" rule yet exists. Indeed, the TBTA Board has yet to even vote on such an adoption, let alone file it.

Similarly, under Rule 7801(1) of the New York Civil Practice Laws and Rules ("N.Y. C.P.L.R."), a state agency action must be "final" before it can be challenged in court. In assessing finality, state courts test the "completeness of the administrative action" and ask whether the

agency has reached a "definitive position on the issue that inflicts an actual, concrete injury." *Essex Cnty. v. Zagata*, 91 N.Y.2d 447, 453 (1998). Thus, administrative actions are not final in New York unless and until they "'impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.'" *Ranco Sand & Stone Corp. v. Vecchio*, 27 N.Y.3d 92, 98 (2016) (quoting *Gordon v. Rush*, 100 N.Y.2d 236, 242 (2003)); *see also* 43 N.Y. Jur. 2d Declaratory Judgments § 31 (explaining that "for a challenge to administrative action to be ripe, the administrative action sought to be reviewed must be final, and the anticipated harm caused by the action must be direct and immediate").

Here, the state administrative process has not reached finality. Far from it. The TBTA Board has not even voted to adopt a toll rate schedule yet.[8] This case is therefore unripe for judicial decision. TBTA has neither completed its ratemaking process nor effectuated the promulgation of a rule. In other words, no rule has been adopted and no rates have been set. Given that New York courts would plainly decline to exercise jurisdiction over a SAPA challenge to an ongoing administrative process in these circumstances, this Court should similarly stay its hand. *See Nevada v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) ("final agency action" is a "crucial prerequisite to ripeness") (cleaned up); *see also Fed'n of Mental Health Ctrs., Inc. v. DeBuono*, 275 A.D.2d 557, 562 (3d Dep't 2000) (SAPA claim not ripe due to lack of final approval from relevant federal entity); *City of New York v. N.Y. Pub. Serv. Comm'n*, 105 A.D.3d 1200, 1202 (3d

---

[8] Further still, once that occurs, FHWA must still reevaluate that adopted tolling structure to determine whether the FONSI remains valid or whether a supplemental environmental analysis is necessary. And even then, the Project cannot go into effect unless FHWA and the Project Sponsors enter into a tolling agreement.

Dep't 2013) (challenge to rate-setting not ripe until "rate plan … is adopted" by agency).[9]

**2.    There Would Be No Hardship to the Parties of Withholding Court Consideration**

The second relevant consideration only bolsters this conclusion. Simply put, withholding judicial consideration at this time would create no cognizable, present hardship for Plaintiffs. *See Simmonds v. INS*, 326 F.3d 351, 360 (2d Cir. 2003) ("The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship."). No agency has yet charged a congestion pricing toll to anyone—and that cannot occur until additional prerequisites are completed. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733-34 (1998) (challenge to agency action unripe where a number of future actions would need to occur to make the harm more "imminent" and "certain"). While Plaintiffs seek to challenge the legality of any future tolls under SAPA, "mere uncertainty as to the validity of a legal rule" does not "constitute a hardship for purposes of the ripeness analysis." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811.

**B.    The SAPA Claim Fails as a Matter of Law**

Even if the Court were to conclude that the SAPA claim is ripe, it should still dismiss the claim under Rule 12(b)(6).

**1.    The SAPA Rulemaking Framework**

SAPA describes two distinct types of rules. Type (i) rules are defined as follows: "[T]he whole or part of each agency statement, regulation or code of general applicability that implements

---

[9] Independent of ripeness, lack of finality is another reason to dismiss the *New Yorkers* Plaintiffs' claim. Although the Second Circuit previously indicated that the requirement of "finality" in administrative cases is jurisdictional, *see Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999), whether finality is jurisdictional or merits-related is now "an open question," *6801 Realty Co., LLC v. U.S. Citizenship & Immigr. Servs.*, 719 F. App'x 58, 60 n.1 (2d Cir. 2018) (citing *Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008)). Regardless of how that jurisprudential issue shakes out, the practical result here would be the same: the *New Yorkers* Plaintiffs' SAPA claim fails because TBTA has not yet adopted nor effectuated the promulgation of a toll rate schedule rule for the Project. *Manchanda v. Lewis*, No. 21-1088, 2021 WL 5986877, at *5 & n.4 (2d Cir. Dec. 17, 2021).

or applies law, or prescribes a fee charged by or paid to any agency or the procedure or practice requirements of any agency, including the amendment, suspension or repeal thereof." SAPA § 102(2)(a)(i). In general, SAPA requires agencies to conduct a range of economic assessments as part of the rulemaking process for a Type (i) rule. *See id.* §§ 201-a(2), 201-a(2)(a).

Type (ii) rules, in turn, are defined in the statute as follows: "[T]he amendment, suspension, repeal, approval, or prescription for the future of rates, wages, security authorizations, corporate or financial structures or reorganization thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs or accounting or practices bearing on the foregoing whether of general or particular applicability." *Id.* § 102(2)(a)(ii). Under SAPA, Type (ii) rules are exempt from the assessments ordinarily required of Type (i) rules. *See id.* §§ 201-a(6)(a), 202-b(3)(a).

As relevant here, TBTA's notice of proposed ratemaking identified the toll rate schedule as a Type (ii) rule. *See* 45 N.Y. Reg. 52 at 48 (Dec. 27, 2023). In line with the requirements set forth under SAPA, TBTA did not perform the analyses that apply only to Type (i) rules. Plaintiffs allege that those analyses were required—a claim which presumes that the proposed toll rate schedule should have been classified as a Type (i) rule. *New Yorkers* ¶¶ 178-79. Thus, Plaintiffs can succeed only if the TBTA's proposed rate schedule is not a Type (ii) rule. But Plaintiffs are wrong.

### 2. The SAPA Claim Fails Because This Is a Type (ii) Rule

SAPA's definitional section does not define the terms within a Type (i) or Type (ii) rule, such as "rates," and state courts have had limited occasion to interpret the language governing these two types of rules. *See, e.g.*, *Hudson River Sloop Clearwater v. N.Y. State Public Serv. Comm'n*, No. 7242-16, 2019 WL 5583492, at *10 (Sup. Ct. Albany Cnty. 2019). In such cases,

New York courts instruct that "the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Matter of Lisa T. v. King E.T.*, 30 N.Y.3d 548, 552 (2017). Courts "construe words of ordinary import with their usual and commonly understood meaning" and consider dictionary definitions to be a useful tool in that exercise. *Walsh v. N.Y. State Comptroller*, 34 N.Y.3d 520, 524 (2019); N.Y. Stat. Law § 234. In addition, a "standard rule of construction" is that "whenever there is a general and a particular provision in the same statute, the general does not overrule the particular but applies only where the particular provision is inapplicable." *Iazzetti v. City of New York*, 94 N.Y.2d 183, 190 (1999); *accord* N.Y. Stat. Law § 238.

Under a straightforward application of these principles, TBTA's proposed toll rate schedule falls squarely within SAPA's definition of Type (ii) rules because it is the "prescription" of "future" "rates" of "general … applicability." SAPA § 102(2)(a)(ii). Prescription is commonly defined as "the action of laying down authoritative rules or directions." *Prescription*, Merriam-Webster Dictionary; *see also Prescription*, Black's Law Dictionary (11th ed. 2019) ("The act of establishing authoritative rules."). And "rate" is commonly defined to include "an amount of payment or charge based on another amount," or "a charge, payment, or price fixed according to a ratio, scale, or standard." *Rate*, Merriam-Webster Dictionary; *see also Rate*, Black's Law Dictionary (11th ed. 2019) ("An amount paid or charged for a good or service."). Put together, the toll rate schedule—which outlines a range of different charges based on different factors that will be applied to vehicles that enter or remain within the congestion zone, 45 N.Y. Reg. 52 at 46-48 (Dec. 27, 2023)—qualifies as "establishing" a "charge" that is "fixed according to" a "scale" or "standard."

This understanding is consistent with other indicators of common usage. People ordinarily refer to charges applied to vehicles for crossing designated roadways, bridges, or tunnels as "toll rates." In fact, in the Amended Complaint, Plaintiffs consistently refer to "rates" or "rate" in discussing the Project. *E.g.*, *New Yorkers* ¶ 98 ("contemplated peak toll rates"); *id.* ¶ 102 ("recommended daytime toll rate"); *id.* ¶ 153 (alleging that costs to small businesses "will vary depending on the toll rate"); *id.* ¶ 172 ("TMRB issued its recommendation regarding the toll rates"); *see also id.* ¶¶ 10, 107, 130. This usage of the term "rate" is also reflected in case law, where judges have long referred to similar charges as "toll rates." *See, e.g.*, *Janes v. Triborough Bridge & Tunnel Auth.*, 997 F. Supp. 2d 320, 338 (S.D.N.Y. 2013) (Engelmayer, J.); *Molinari v. N.Y. Triborough Bridge & Tunnel Auth.*, 838 F. Supp. 718, 725 (E.D.N.Y. 1993) (Korman, J.); *Carey Transp., Inc. v. Triborough Bridge & Tunnel Auth.*, 38 N.Y.2d 545, 548-49 (1976); *D'Angelo v. Triborough Bridge & Tunnel Auth.*, 106 A.D.2d 128, 128-31 (1st Dep't 1985).

This is completely consistent with historical practice. TBTA routinely uses Type (ii) rulemaking to prescribe toll rates. For example, in 2019, the federal government repealed the longstanding ban on two-way tolling on the Verrazzano-Narrows Bridge. Further Consolidated Appropriations Act, 2020, Pub. L. No. 116–94, div. H, tit. I, § 126, 133 Stat. 2534, 2953. Following that repeal, TBTA published a notice of proposed ratemaking, which expressly stated that the rule's purpose was to "provide for the implementation of split tolling at TBTA's Verrazzano-Narrows Bridge as required by Federal law." 42 N.Y. Reg. 26 at 22 (July 1, 2020) (codified at 21 N.Y.C.R.R. § 1021.1). The tolling schedule as finally adopted imposed charges ranging from $1.70 to $73.76 based on several factors, including place of residence, vehicle type, and E-ZPass account status. *See* 21 N.Y.C.R.R. § 1021.1 (Sept. 2020). TBTA categorized the proposed rate schedule as a Type (ii) rule under Section 102(2)(a)(ii). *See* 42 N.Y. Reg. 26 at 22 (July 1, 2020). And TBTA

has followed a similar regulatory ratemaking process at least ten additional times since 2008.[10] This case is no different—and so the SAPA claim fails on the merits, since the process for Type (ii) rules was and is being properly respected.

Because TBTA's proposed rule is the "prescription" of "future" "rates" of "general … applicability," it was correctly categorized as a Type (ii) rule under SAPA. § 102(2)(a)(ii). Any contention that TBTA, in conducting this ratemaking, is also "implement[ing] or appl[ying] law" (namely, the Traffic Mobility Act), should not lead to a Type (i) classification for at least two reasons.

*First*, agencies can act only pursuant to their enabling statutes or other sources of authorizing legislation. *Dep't of Pers. of N.Y.C. v. N.Y.C. Civil Serv. Comm'n*, 79 N.Y.2d 806, 807 (1991) ("An administrative agency has only those powers expressly or impliedly given it."). In this regard, TBTA could not prescribe toll rates if the New York Legislature had not provided it with that authority. So when TBTA (or any agency) conducts rulemaking for a Type (ii) rule, it necessarily "implements or applies law," or else the agency action would be unlawful. If rules qualified as Type (i) purely on that basis, then it would render meaningless all of SAPA's express exemptions for Type (ii) rules.

*Second*, the more specific provision controls as a matter of standard statutory interpretation. In this case, the general provision ("implements or applies law") does not overrule the particular provision ("prescription" of "future" "rates" of "general … applicability"). SAPA §§ 102(2)(a)(i),

---

[10] *See* 45 N.Y. Reg. 32 at 35-37 (Aug. 9, 2023) (codified at 21 N.Y.C.R.R. § 1021.1); 43 N.Y. Reg. 10 at 7 (Mar. 10, 2021) (codified at 21 N.Y.C.R.R. § 1021.1); 41 N.Y. Reg. 12 at 17-18 (Mar. 20, 2019) (codified at 21 N.Y.C.R.R. § 1021.1); 39 N.Y. Reg. 11 at 21-22 (Mar. 15, 2017) (codified at 21 N.Y.C.R.R. § 1021.1); 37 N.Y. Reg. 9 at 5-7 (Mar. 4, 2015) (codified at 21 N.Y.C.R.R. § 1021.1); 35 N.Y. Reg. 2 (Jan. 9, 2013) (codified at 21 N.Y.C.R.R. § 1021.1); 32 N.Y. Reg. 46 (Nov. 17, 2010) (codified at 21 N.Y.C.R.R. § 1021.1); 31 N.Y. Reg. 34 (Aug. 26, 2009) (codified at 21 N.Y.C.R.R. § 1021.1); 31 N.Y. Reg. 15 (Apr. 15, 2009) (codified at 21 N.Y.C.R.R. § 1021.1); 30 N.Y. Reg. 2 (Jan. 9, 2008) (codified at 21 N.Y.C.R.R. § 1021.1).

(ii). Rather, the general provision "applies only where the particular enactment is inapplicable." *Mental Hygiene Legal Serv. v. Sullivan*, 32 N.Y.3d 652, 658 (2019). Here, the definition of a Type (ii) rule is more particular and more apt, so it properly governs as the relevant classification.

## III.    TMRB Cannot Be Held Liable Under NEPA and SAPA

This leaves one final point: TMRB, sued solely in *New Yorkers*, should be dismissed in any event. Under the Traffic Mobility Act, TMRB's role in the Project is a narrow one: to provide TBTA, the agency responsible for establishing and implementing the Project, with a recommendation regarding the Project's toll rates. *See* N.Y. Pub. Auth. Law § 553-k(2); N.Y. Veh. & Traf. Law § 1704-a(3)-(4); *Dep't of Pers. of N.Y.C.*, 79 N.Y.2d at 807. Thereafter, the authority to review and adopt a final toll rate schedule rests solely with TBTA. *See New Yorkers* ¶¶ 10, 73, 128.

This makes TMRB an improper Defendant with respect to the NEPA and SAPA claims in *New Yorkers*. With respect to NEPA, TMRB's role is entirely divorced from Plaintiffs' NEPA claim, which relates exclusively to the environmental review process. *See id.* ¶¶ 164-68. TMRB was not involved in that process; it started and completed its sole role under state law months after FHWA issued the Final EA and FONSI. As a result, it has no authority to provide Plaintiffs with any relief. *N.Y. Immigr. Coal. v. U.S. Dep't of Com.*, No. 18 Civ. 5025, 2018 WL 4292673, at *2 (S.D.N.Y. Sept. 7, 2018) (Furman, J.) (Rule 12(b)(6) dismissal of APA claims against defendants not sufficiently involved in challenged agency action); *Arab v. Blinken*, 600 F. Supp. 3d 59, 67 n.5 (D.D.C. 2022) (same where "plaintiff has not alleged sufficient facts to show that" agency officials "had any hand in causing the complained-of" harm). Similarly, when it comes to SAPA, that statute applies only to agencies "authorized by law to make rules," "at least one of whose members is appointed by the governor." SAPA § 102(1). But no member of TMRB is appointed by the

governor, *see* N.Y. Pub. Auth. Law § 553-k, and TMRB is not authorized to make any rules—it can only supply TBTA with a "recommendation" for toll rates, N.Y. Pub. Auth. Law § 553-k(2); N.Y. Veh. & Traf. Law §§ 1704-a(3)-(4). For these reasons, neither the NEPA nor the SAPA claims may properly be maintained as to TMRB.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the NEPA claims in *Mulgrew* and *New Yorkers* relating to the Final EA and FONSI; it should dismiss the SAPA claim in *New Yorkers*; and, in all events, it should dismiss TMRB as a Defendant in *New Yorkers*.

Dated: March 18, 2024

Respectfully submitted,

SYLVIA O. HINDS-RADIX
Corporation counsel of the City of New York

By: */s/ Nathan Taylor*
     Nathan Taylor
     Senior Counsel
     Environmental Law Division
     New York City Law Department
     100 Church Street
     New York, NY 10007
     Telephone: 212-356-2315
     ntaylor@law.nyc.gov

*Counsel for Defendant the New York City
Department of Transportation*

  */s/ Mark A. Chertok*
Mark A. Chertok
Elizabeth Knauer
John F. Nelson
SIVE, PAGET & RIESEL, P.C.
560 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 421-2150
mchertok@sprlaw.com
eknauer@sprlaw.com
jnelson@sprlaw.com

  */s/ Roberta A. Kaplan*
Roberta A. Kaplan
Gabrielle E. Tenzer
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com

Joshua Matz
Kate Harris (*pro hac vice* forthcoming)
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@kaplanhecker.com
kharris@kaplanhecker.com

*Counsel for Defendants the
Metropolitan Transportation Authority,
the Triborough Bridge and Tunnel
Authority, and the Traffic Mobility
Review Board*