UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORKERS AGAINST CONGESTION PRICING TAX, *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>        Defendants. | No. 24 Civ. 367 (LJL) |
| MICHAEL MULGREW, *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>        Defendants. | No. 24 Civ. 1644 (LJL) |

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2728
Email: zachary.bannon@usdoj.gov

ZACHARY BANNON
DOMINIKA TARCZYNSKA
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

    I.    Plaintiffs' Claims Challenging the Final EA and FONSI Are Time Barred ........... 2

        A.    Section 139 Applies to Claims Challenging the FHWA's FONSI and EA ................................................................................................................. 2

        B.    The FONSI Was a Final Agency Action ....................................................... 5

        C.    Section 139(l)(2) Is Inapplicable .................................................................... 8

        D.    Plaintiffs Are Not Entitled to Tolling of the Statute of Limitations ......... 10

    II.    Plaintiffs' Failure-to-Supplement Claims Are Unripe ......................................... 12

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Biden v. Texas*,
    597 U.S. 785 (2022) ............................................................................................................. 9

*Bolt v. United States*,
    944 F.2d 603 (9th Cir. 1991) ............................................................................................. 11

*Catskill Mt. Chapter of Trout Unlimited, Inc. v. Env'tl Protection Agency*,
    846 F.3d 492 (2d Cir. 2017) ................................................................................................ 6

*CTIA-Wireless Ass'n v. F.C.C.*,
    466 F.3d 105 (D.C. Cir. 2006) ............................................................................................. 9

*Ctr. for Biological Diversity v. Cal. Dep't of Transp.*,
    No. 12-2172, 2013 WL 6698740 & n.10 (N.D. Cal. Dec. 19, 2013) ............................ 10, 12

*Cure Land, LLC v. United States Dep't of Agric.*,
    833 F.3d 1223 (10th Cir. 2016) ........................................................................................... 8

*DeSuze v. Ammon*,
    990 F.3d 264 (2d Cir. 2021) .............................................................................................. 11

*Earth Island Inst. v. U.S. Forest Service*,
    87 F.4th 1054 (9th Cir. 2023) ...................................................................................... 14, 15

*Estate of Amaro v. City of Oakland*,
    653 F.3d 808 (9th Cir. 2011) ........................................................................................ 11, 12

*Friends of Hamilton Grange v. Salazar*,
    No. 08 Civ. 5220 (DLC), 2009 WL 650262 (S.D.N.Y. Mar. 12, 2009) .............................. 6

*Greene County Planning Bd. v. Federal Power Comm'n.*,
    490 F.2d 256 (2d Cir. 1973) ................................................................................................ 6

*Hippocratic Med. v. U.S. Food & Drug Admin.*,
    78 F.4th 210 (5th Cir. 2023) ................................................................................................ 9

*Jersey Heights Neighborhood Ass'n v. Glendening,*
    174 F.3d 180 (4th Cir. 1999) ............................................................................................. 10

*Johnson v. United States*,
    123 F.3d 700 (2d Cir. 1997) ................................................................................................ 4

*Latin Ams. for Soc. & Econ. Dev. v. Adm'r of Fed. Highway Admin.*,
  858 F. Supp. 2d 839 (E.D. Mich. 2012) .................................................................................. 15

*Milk Train, Inc. v. Veneman*,
  310 F.3d 747 (D.C. Cir. 2002) ................................................................................................ 6

*Montlake Cmty. Club v. Mathis*,
  No. 17 Civ. 1780 (JCC), 2019 WL 3928732 (W.D. Wash. Aug. 20, 2019) ............................ 14

*Native Songbird Care & Conservation v. LaHood*,
  No. 13-CV-02265-JST, 2013 WL 3355657 (N.D. Cal. July 2, 2013) ............................... 10, 15

*Nat'l Union Fire Ins. Co. v. City Dav., F.S.B.*,
  28 F.3d 376 .............................................................................................................................. 5

*Nero v. Uphold HQ Inc.*,
  No. 22 Civ. 1602 (DLC), 2023 WL 5426203 (S.D.N.Y. Aug. 23, 2023) ................................. 5

*Norton v. Fed. Highway Admin.*,
  No. 01 Civ. 891 (JTE), 2002 WL 31017416 (W.D.N.Y. Aug. 8, 2002) ................................. 14

*NRDC v. U.S. Army Corps of Eng'rs*,
  457 F. Supp. 2d 198 (S.D.N.Y. 2006) ..................................................................................... 7

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
  523 U.S. 726 (1998) ............................................................................................................... 15

*Pearl v. City of Long Beach*,
  296 F.3d 76 (2d Cir. 2002) ..................................................................................................... 11

*R.L. Vallee, Inc. v. Vt. Agency of Transp.*,
  No. 20-2665, 2021 WL 4238120 (2d Cir. Sept. 17, 2021) ....................................................... 8

*Shenandoah Valley Net. v. Capka*,
  No. 07 Civ. 66 (NKM), 2009 WL 2905564 (W.D. Va. Sept. 3, 2009) .................................... 7

*Sierra Club North Star Chapters v. Peters*,
  Civil No. 07 Civ. 2593 (MJD), 2008 WL 2152199 (D. Minn. May 15, 2008) .................. 8, 12

*South Carolina Wildlife Federation v. South Caroline Dep't of Transp.*,
  485 F. Supp. 2d 661 (D.S.C. 2007) ........................................................................................ 14

*Tahoe Cabin LLC v. Fed. Highway Admin.*,
  No. 22 Civ. 175 (RCJ), 2023 WL 2021289 (D. Nev. Feb. 14, 2023) .................................... 12

*Town of Fairview v. U.S. Dep't of Transp.*,
  201 F. Supp. 2d 64 (D.D.C. 2002) ................................................................................ 13, 16

*United States v. Bedi*,
  15 F.4th 222 (2d Cir. 2021) ................................................................................................ 4

*Watson v. United States*,
  865 F.3d 123 (2d Cir. 2017) ............................................................................................. 11

*Western Union Telegraph Co v. FCC*,
  773 F.2d 375 (D.C. Cir. 1985) ......................................................................................... 13

*Yorkshire Towers Co., L.P. v. U.S. Dep't of Transp.*,
  No. 11 Civ. 1058 (TPG), 2011 WL 6003959 (S.D.N.Y. Dec. 1, 2011) ...................... 10, 12

**Statutes**

23 U.S.C. § 101 .................................................................................................................... 4

23 U.S.C. § 139 ........................................................................................................... *passim*

49 U.S.C. § 5302 .................................................................................................................. 5

**Regulations**

23 C.F.R. Part 810 ............................................................................................................... 5

23 C.F.R. § 771.129 .............................................................................................. 8, 12, 14

23 C.F.R. § 771.130 ...................................................................................................... 9, 14

23 C.F.R. § 771.139 ............................................................................................................ 6

23 C.F.R. § 810.4 ................................................................................................................ 5

## INTRODUCTION

Despite Plaintiffs'[1] protestations, the fact that one of their claims is time-barred while the other is unripe is merely the product of the actions they seek to challenge. First, they challenge the FHWA's[2] analyses in its Final EA and FONSI, for which a 150-day statute of limitations applied (here November 27, 2023). Since both sets of Plaintiffs did not file suit until early 2024, their claims challenging those documents are too late. Second, they challenge the FHWA's alleged failure to supplement its earlier analyses to account for the final tolling schedule adopted by the TBTA on March 27, 2024. But the FHWA has not yet had the opportunity to assess whether it needs to supplement its analysis. Thus, those claims are unripe.

Plaintiffs' attempts to avoid this result are internally inconsistent. On one hand, they argue that the Final EA and FONSI were not final agency actions that would trigger the limitations period because they were issued before the Project's final tolling schedule was adopted and before the FHWA had the chance to re-evaluate its environmental analyses. On the other hand, they argue that their challenge to the FHWA's failure to supplement its environmental analyses is ripe, even though they filed suit before the Project's final tolling schedule was adopted and before the FHWA completed the predicate action (a re-evaluation) to any such supplement. Both contentions contradict the clear weight of authority. Courts have consistently held that re-evaluation of a NEPA document does not affect the timeliness of challenges to the underlying document. Courts also consistently refrain from deciding whether environmental reviews must be supplemented until after the agency has had the chance to determine in the first instance whether supplementation is in fact warranted.

---

[1] Plaintiffs concede that the claims asserted by the City Councilmember Plaintiffs in their official capacity were without authority and should be dismissed. *See Mulgrew* Br. at 28 n.29.

[2] Unless noted otherwise, this brief uses the same defined terms as the Federal Defendants' opening brief.

For the reasons outlined below, as well as those in Federal Defendants' opening brief, Claims I & II of both the *NYAGC* and *Mulgrew* Amended Complaints should be dismissed.

**ARGUMENT**

I. **Plaintiffs' Claims Challenging the Final EA and FONSI Are Time Barred**

As explained in Federal Defendants' opening brief, because Plaintiffs failed to bring their claims by November 27, 2023, the 150-day statute of limitations in 23 U.S.C. § 139(l)[3] bars their challenges to the sufficiency of the Final EA and FONSI. *See* Fed. Def. Br. at 11-13. Plaintiffs' assertions to the contrary are without merit.

A. **Section 139 Applies to Claims Challenging the FHWA's FONSI and EA**

Contrary to the *NYAGC* Plaintiffs' arguments, *see NYAGC* Br. at 8, the Project is subject to the § 139 statute of limitations period because § 139(l)(1) applies to judicial review of federal approvals of "highway . . . project[s]" and "public transportation capital project[s]." 23 U.S.C. § 139(l)(1). As described below, the FHWA's review of the Project at issue here fits comfortably within both categories, particularly given the discretion owed to the agency in determining the applicability of § 139 to projects.

To begin, the Project is a "highway project" within the meaning of 23 U.S.C. § 139(a)(9)(A). First, the Project's purpose is to "reduce traffic congestion in the Manhattan CBD in a manner that will generate revenue for future transportation improvements." Final EA at ES-6; *see also* FONSI at 1; Final EA at 2-5. Second, the ultimate federal action at issue—a VPPP agreement, providing the MTA with tolling authority for the Project—is intended to "manage congestion on *highways* through tolling and other pricing mechanisms." FHWA, *Value Pricing*

---

[3] Section 139(l)(1) provides, in relevant part, that "a claim arising under Federal law seeking judicial review of a permit, license, or approval issued by a Federal agency for a highway or public transportation capital project shall be barred unless it is filed within 150 days after publication of a notice in the Federal Register announcing that the permit, license, or approval is final pursuant to the law under which the agency action is taken."

*Pilot Program*, available at https://www.fhwa.dot.gov/ipd/tolling_and_pricing/tolling_pricing/vppp.aspx (emphasis added). Third, FHWA approval is only required because "[s]ome roadways within the Manhattan CBD are part of the National Highway System and some have been improved with funding from the Federal government." Final EA at ES-6; *see also* Final EA at 1-3 (identifying National Highway System within the CBD); 23 U.S.C. § 101(a)(11) (defining "highways" as including, among other things, "road[s]", "street[s]", "bridges", and "tunnel[s]"). And, fourth, the Project will alter (in beneficial ways) traffic flows on highways both within and surrounding the CBD. *See, e.g.*, Final EA at 4B-13 (identifying highways leading to the CBD and affected by the Project). In sum, the Project is intended to reduce traffic on highways, and the VPPP is a highway program; the FHWA therefore reasonably applied § 139 to the NEPA review at issue here.[4] Plaintiffs point to no authority that a project affecting highway traffic on National Highway System routes is not a "highway project."[5] *See Johnson v. United States*, 123 F.3d 700, 703 (2d Cir. 1997) (statutory construction must "look to the common sense of the statute").

If that were not sufficient, the Project also qualifies as a "public transportation capital project," considering both the plain meaning of that term and how the term is used in other

---

[4] The § 139 limitations period applies to the "judicial review of a permit, license, or approval issued by a Federal agency for a highway or public transportation capital project." 23 U.S.C. § 139(l)(1); *see also* U.S. Dep't of Transp., *SAFETEA-LU Environmental Review Process Final Guidance*, at 61 (2006), *available at* https://www.transit.dot.gov/sites/fta.dot.gov/files/2020-11/SAFETEA-LU-Environmental-Review-Process-Final-Guidance-2006.pdf ("A SOL notice can be used for any final action by a Federal agency that is required for a highway project and is subject to judicial review."). Plaintiffs do not dispute that the VPPP agreement (for which NEPA review is required) is "a permit, license, or approval issued by a Federal agency" under this provision.

[5] The *NYAGC* Plaintiffs also argue that § 139(l) applies only to "highways" and "highway capital projects." *NYAGC* Br. at 8. But this reading of § 139(l), which discusses "highway or public transportation capital project[s]," is inconsistent with the structure of § 139. The definition section of § 139 explains that the term "project" refers to both "highway project[s]" and "public transportation capital project[s]." 23 U.S.C. § 139(a)(9)(A). Accordingly, it makes no sense to read § 139(l) to separately refer to "highway[s]" and "public transportation capital project[s]." The more natural reading of the statute uses "highway" as an adjective referring to "highway . . . projects." *See, e.g.*, *United States v. Bedi*, 15 F.4th 222, 226 (2d Cir. 2021) (statutory language should be construed "in its context and in light of the terms surrounding it"). Moreover, the FHWA has adopted this construction in its guidance. *See SAFETEA-LU Environmental Review Process Final Guidance*, at 10.

transportation-related provisions of the United States Code. Public transportation is commonly understood as "a system of trains, buses, etc., that is paid for or run by the government." Merriam-Webster, *public transportation*, *available at* https://www.merriam-webster.com/dictionary/public%20transportation; *see also* 49 U.S.C. § 5302(15) (defining "[p]ublic transportation" as "regular, continuing shared-ride surface transportation services"). The MTA's subway, bus, and commuter rail services plainly meet these definitions. And capital projects are "large and expensive project[s] to build or improve a capital asset." Cambridge Dictionary, *capital project*, *available at* https://dictionary.cambridge.org/us/dictionary/english/capital-project; *see also* 49 U.S.C. § 5302(4)(G) (defining "capital project" as, among other things, a project that "enhances economic development," "enhances the effectiveness of public transportation," and "provides a fair share of revenue that will be used for public transportation"). Here, the Project is explicitly intended to fund investments in the subway, commuter rail, and bus systems. *See* Final EA at ES-7 (noting that the Project is anticipated "to fund $15 billion for capital projects for the MTA Capital Program."). And, even aside from generating revenue, the Project will improve the functioning of the MTA's bus system. *See id.* at ES-6 (noting that congestion "reduce[s] bus and paratransit service quality"). Taken together, the Project qualifies as a "public transportation capital project." *Cf. Nero v. Uphold HQ Inc.*, No. 22 Civ. 1602 (DLC), 2023 WL 5426203, at *2 (S.D.N.Y. Aug. 23, 2023) ("When a term is not defined by statute, courts may look to its ordinary meaning found in contemporary dictionary definitions." (quotation marks omitted)); *Nat'l Union Fire Ins. Co. v. City Dav., F.S.B.*, 28 F.3d 376, 386 (defining term by reference to analogous statutory provisions).[6]

---

[6] Concluding that the Project is a "public transportation capital project" is also consistent with the regulations implementing the statute authorizing the VPPP, 23 C.F.R. Part 810. Those regulations define the analogous concept of a "[n]onhighway public mass transit project" as "a project to develop or improve public mass transit facilities or equipment." 23 C.F.R. § 810.4(b)(6). To qualify, a project need only be "related to a program for the development or improvement of an urban public mass transit system which includes the purchase and rehabilitation of passenger buses and rolling stock for fixed rail facilities, and the purchase, construction, reconstruction or rehabilitation of fixed rail

Further, concluding that the Project is both a "highway project" and a "public transportation capital project" is consistent with the discretion afforded to the agency in interpreting the scope of § 139. 23 U.S.C. § 139(b)(1) ("The project development procedures in this section . . . may be applied . . . to the extent determined appropriate by the Secretary."); *see also Catskill Mt. Chapter of Trout Unlimited, Inc. v. Env'tl Protection Agency*, 846 F.3d 492, 507 (2d Cir. 2017) (affording deference to agency's "reasoned" interpretation of statute it administers); *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002) (noting that statutory language allowing for any decision "determined appropriate by the Secretary" imbued such wide discretion that judicial review was precluded). Consistent with that authority, the FHWA's regulation implementing § 139 refers broadly to "transportation project[s]." 23 C.F.R. § 771.139; *see also SAFETEA-LU Environmental Review Process Final Guidance*, at 61 (interpreting Section 139 as broadly applicable to "transportation program implementation."). Indeed, the rulemaking updating § 771.139 explicitly "decline[d]" to constrain application of § 139 so as to give the agency flexibility based on the nature of the agency "approvals or decisions" applicable to a particular project. 83 Fed. Reg. 54,480, 54,490 (Oct. 29, 2018). Here, given the nature of this project, the FHWA's application of § 139 was more than reasonable.

### B. The FONSI Was a Final Agency Action

Next, Plaintiffs are incorrect that the FONSI was not a final agency action triggering applicability of § 139. *NYAGC* Br. at 9-10; *Mulgrew* Br. at 20-26. At the outset, it is unclear why Plaintiffs believe they would benefit from a finding that the FONSI was not final. If true, that fact would necessitate dismissal of all their claims on ripeness grounds. *See, e.g., Greene County*

---

passenger operating facilities." *Id.* The FHWA's application of § 139 here to a Project intended to, among other things, repair rail facilities, is reasonable and consistent with the regulations implementing the VPPP.

*Planning Bd. v. Federal Power Comm'n.*, 490 F.2d 256, 258 (2d Cir. 1973) (rejecting as not ripe a challenge to an EIS that had not been finalized by agency order); *Friends of Hamilton Grange v. Salazar*, No. 08 Civ. 5220 (DLC), 2009 WL 650262, *21-22 (S.D.N.Y. Mar. 12, 2009) (dismissing APA claim for failure to allege final agency action).

But in any event, the FONSI is not "tentative," as Plaintiffs contend. Rather, it represents the FHWA's decision that the Project, as "described in the Final EA and identified as the Selected Alternative, *will* have no significant impact on the human or natural environment" when accounting for "appropriate mitigation measures." FONSI at 1 (emphasis added); *see also id.* at 26 (explaining that "[t]he adopted TBTA toll rates and structure will have to be reevaluated to determine if *the decision made in the FONSI* is still valid" (emphasis added)). In other words, the FONSI reflects the FHWA's final determination that, assuming the final tolling schedule does not significantly differ from the range of scenarios assessed in the Final EA, the Project will not result in significant impacts. *See NRDC v. U.S. Army Corps of Eng'rs*, 457 F. Supp. 2d 198, 216 n.121 (S.D.N.Y. 2006) (referring to EA and FONSI as "final NEPA documentation").[7] Said differently, the FONSI was final at the time of issuance because, if the TBTA adopts a tolling schedule that does not result in greater negative effects than the worst-case scenario modeled in the Final EA, no further NEPA review will be required. *See* FONSI at 26; *cf. Shenandoah Valley Net. v. Capka*, No. 07 Civ. 66 (NKM), 2009 WL 2905564, at *13-14 (W.D. Va. Sept. 3, 2009) (application of Section 139(l) to challenge programmatic-level review, which explicitly contemplated that future analyses would need to be performed for specific highway sections, was proper since

---

[7] Plaintiffs' citation to *Taxpayers Opposed to Oz, Inc. v. Barram* is distinguishable. There, the court found that an agency's NEPA review was not final due to a simultaneous review under the National Historic Preservation Act. No. 00 Civ. 2136 (CM), 2000 WL 1595754, at *4 (D. Kan. Oct. 16, 2000). But the court noted that "[i]f the [agency's] action necessitated only a review under the NEPA, the [agency's] NEPA review would clearly meet the APA's final agency action requirement." *Id*. So too here with respect to the FHWA's review in the Final EA and FONSI.

- 6 -

programmatic-level decision was "reviewable at the time the decision [was] rendered").

The fact that the FHWA noted in the FONSI that "[t]he adopted TBTA toll rates and structure will have to be re-evaluated to determine if the decision made in the FONSI is still valid," FONSI at 26, does not change this result. This language merely reiterates the agency's ongoing obligation under 23 C.F.R. § 771.129 to determine whether "any previously approved aspect of an action, including mitigation commitments, [in] an approved environmental document remains valid."  Courts have routinely held that re-evaluation of an earlier agency decision does not somehow render the initial decision tentative or otherwise non-final. *See, e.g., R.L. Vallee, Inc. v. Vt. Agency of Transp.*, No. 20-2665, 2021 WL 4238120, at *1 (2d Cir. Sept. 17, 2021) (rejecting argument that "decision [that no EIS was required] did not constitute final agency action . . . [even though] the FHWA [later] reevaluated its earlier decision and concluded that the categorical exclusion 'remained valid'"); *Sierra Club North Star Chapters v. Peters*, Civil No. 07 Civ. 2593 (MJD), 2008 WL 2152199, at *13 (D. Minn. May 15, 2008) ("The fact that the [agency] will need to reevaluate the project if, due to some unexpected event, the scope of the project or mitigation package changes substantially does not mean that the . . . [e]valuation lacks finality.").  Indeed, by Plaintiffs' reading, every FONSI would be tentative, given the ongoing re-evaluation obligation regarding every project falling within the regulation. *See Cure Land, LLC v. United States Dep't of Agric.*, 833 F.3d 1223, 1231 (10th Cir. 2016) ("[W]e [are not] swayed by the FONSI's caveat that the agency may revisit the FONSI if the proposed amendment undergoes 'a significant expansion or increase,' . . . That much is true of any major federal project, whether or not it is stated explicitly in the corresponding FONSI.").[8]

---

[8] Contrary to the *Mulgrew* Plaintiff's assertion, this *Cure Lands* supports Federal Defendants' position with respect to finality of the FONSI and applicability of 23 U.S.C. § 139(l). *See id.* ("The FONSI satisfies the second finality requirement because it establishes which changes to the conservation program the agency may implement immediately—and which would require additional process to comply with NEPA.").

Further, and contrary to the *NYAGC* Plaintiffs' assertion, the D.C. Circuit's "reopening doctrine," does not save their case. *NYAGC* Br. at 10. The reopening doctrine is based on "[t]he general principle . . . that if the agency has opened [an] issue up anew, even though not explicitly, its renewed adherence is substantively reviewable." *CTIA-Wireless Ass'n v. F.C.C.*, 466 F.3d 105, 110 (D.C. Cir. 2006) (quotation marks omitted). Here, the FHWA has not opened the FONSI and Final EA anew. Setting aside the fact that Plaintiffs identify no case applying the doctrine to a NEPA review, the Supreme Court recently noted that it "has never adopted [the D.C. Circuit's reopening doctrine], and the doctrine appears to be inapposite to the question of final agency action." *Biden v. Texas*, 597 U.S. 785, 809 n.8 (2022); *see also All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 242 n.6 (5th Cir. 2023) ("The Supreme Court has cast some doubt on whether the reopening doctrine is a legitimate exception to a statute of limitations.").

### C.  Section 139(l)(2) Is Inapplicable

Contrary to the position of the *Mulgrew* Plaintiffs, Section 139(l)(2) is inapplicable here (at least as to challenges to the Final EA and FONSI). *Mulgrew* Br. at 17. Subsection 2 provides that new information shall be considered after the close of a comment period if it "satisfies the requirements for a supplemental environmental impact statement" and further explains that "preparation of a supplemental environmental impact statement when required" by information falling within the bounds of 23 C.F.R. § 771.130, "shall be considered a separate final agency action and the deadline for filing a claim for judicial review of such action shall be 150 days after the date of publication of a notice in the Federal Register announcing such action." 23 U.S.C. § 139(l)(2). The provision facially applies to EISs, not EAs, and thus is inapposite to the review at issue here. Indeed, the FHWA has explained that a re-evaluation "does not serve as [a] supplemental analysis or supplemental documentation under 23 CFR 771.130." NEPA Re-Evaluation Joint Guidance at 1.

But even if the Court were to construe Section 139(l)(2) as applying to EAs, it does not work to extend the statute of limitations for a challenge to analysis that the FHWA performed in the Final EA and FONSI. As the court explained in *Yorkshire Towers Co.*, the "*de facto* exception to the statute of limitations" in Section 139(l)(2), is based on the "apparent assumption . . . that the 'new information' was something not considered in making of the decision" and thus "the statute of limitations in § 139(l)(2) does not apply to 'new information.'" *Yorkshire Towers Co., L.P. v. U.S. Dep't of Transp.*, No. 11 Civ. 1058 (TPG), 2011 WL 6003959, at *4 (S.D.N.Y. Dec. 1, 2011). According to Plaintiffs' own allegations supporting Count I, new information is not issue. Instead, Count I of the Plaintiffs' complaints bring challenges that are not based on any new information, but on supposed deficiencies with the Final EA and FONSI. *See, e.g.*, *Mulgrew* Am. Compl. ¶¶ 146-48 (alleging Final EA was facially invalid for failure to analyze a final tolling scenario); *id.* ¶ 150 (alleging that the FHWA "failed to adequately analyze and address significant environmental justice concerns"). Similarly, in *Yorkshire Towers*, the court found a challenge based on alternatives was time-barred because it was not based on "something not considered in the making of the decision." 2011 WL 6003959, at *4. Here, Plaintiffs challenges to the validity of the Final EA could have been brought during the 150-day statute of limitations; they failed to do so, and those claims are now time-barred.

Moreover, Plaintiffs' *failure-to-supplement claims* (Counts II of the Plaintiffs' complaints) cannot revive their underlying challenge to the original NEPA analyses. Rather, such claims would constitute separate challenges to the agency's determination not to supplement the Final EA. *Native Songbird Care & Conservation v. LaHood*, No. 13-CV-02265-JST, 2013 WL 3355657, at *6 (N.D. Cal. July 2, 2013); *Ctr. for Biological Diversity v. Cal. Dep't of Transp.*, No. 12-2172, 2013 WL 6698740, at *7 & n.10 (N.D. Cal. Dec. 19, 2013). The FHWA's re-evaluation

to determine whether a supplemental analysis is needed is ongoing. If the FHWA finds that no supplemental review is required, that determination would be subject to review to the extent Plaintiffs believe the agency's analysis was improper. *See Jersey Heights Neighborhood Ass'n v. Glendening,* 174 F.3d 180, 190 (4th Cir. 1999) (challenge to failure to prepare a supplemental review assessed under different statute of limitations than challenge to main NEPA documents).

### D.  Plaintiffs Are Not Entitled to Tolling of the Statute of Limitations

Moreover, the *Mulgrew* Plaintiffs have not shown that they are entitled to equitable tolling of the statute of limitations, *Mulgrew* Br. at 27-28, because they have not shown that they were "'prevented in some extraordinary way from exercising [their] rights.'" *DeSuze v. Ammon*, 990 F.3d 264, 271 (2d Cir. 2021). As the Second Circuit has explained, equitable tolling only applies in "a situation where a plaintiff 'could show that it would have been *impossible* for a reasonably prudent person to learn' about his or her cause of action.'" *Id.* (emphasis in original) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002)). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017). Plaintiffs have not made such a showing—indeed, the fact that numerous other plaintiffs did file timely challenges to the FHWA's Final EA and FONSI belies any claim about the "impossibility" of bringing a timely challenge.

Plaintiffs assert that they could not challenge the Final EA and FONSI until a proposed tolling schedule was issued by the TBTA because, until that schedule was public, they did not have a "full understanding of the true facts." *Mulgrew Br.* at 27 (quoting *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011)). But this argument is undercut by the *Mulgrew* Plaintiffs own allegations in support of Count I of their amended complaint, which are largely independent from the content of the tolling schedule ultimately adopted. *See Mulgrew* Am. Compl. ¶¶ 146-51. And, in any event, Plaintiffs' reliance on *Estate of Amaro* is misplaced. In that case,

the court explained that to establish equitable estoppel against the government, the plaintiff must establish "affirmative misconduct . . . and a serious injustice outweighing the damage to the public interest of estopping the government." *Estate of Amaro*, 653 F.3d at 813 (quoting *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991)). There, the court found "the doctrine of equitable estoppel does apply where a plaintiff believes she has a . . . claim but is dissuaded from bringing the claim by affirmative misrepresentations and stonewalling by the police." *Id.* at 815.[9]

Here, Plaintiffs have not made any showing of misconduct or misrepresentation by the Government that prevented or dissuaded them from bringing their claims. *See Yorkshire Towers*, 2011 WL 6003959 at *4-5 (rejecting equitable tolling and equitable estoppel argument where plaintiff had not shown facts that "amount to concealment or egregious conduct" and had not established that the "the government affirmatively misstated or unlawfully failed to disclose [information]"). To the contrary, the Final EA plainly contemplated the later adoption of a final tolling schedule and made clear that its analysis was confined to the tolling scenarios clearly delineated within the Final EA. Final EA at 2-29-2-36. As such, any claim about the adequacy of the tolling scenarios and environmental effects considered in the Final EA and FONSI was apparent to potential plaintiffs as of June 2023. *See Tahoe Cabin LLC v. Fed. Highway Admin.*, No. 22 Civ. 175 (RCJ), 2023 WL 2021289, at *7 (D. Nev. Feb. 14, 2023) (finding plaintiffs failed to establish equitable tolling claim where, among other things, "the information that Plaintiffs needed was the FONSI, a document available to the public" and "[n]o extraordinary circumstance prevented Plaintiffs from bringing an action before the deadline to file passed").

---

[9] Similarly, *Peters* does not help Plaintiffs in their argument. In that case, the court applied equitable tolling because in the Federal Register notice, the FHWA had misstated the deadline to file a claim. *Peters*, 2008 WL 2152199, at *5-6. The court noted that "through its publication of a misleading Federal Register notice, [the FHWA] lulled Sierra Club into inaction" and concluded that "the Sierra Club acted reasonably and in good faith by filing its lawsuit 'on or before June 6, 2007,' as directed by the FHWA." *Id.* at *10. Here, the Federal Register notice clearly, and correctly, stated that claims had to be filed by November 27, 2023. 88 Fed. Reg. at 41,998.

## II.     Plaintiffs' Failure-to-Supplement Claims Are Unripe

Before approving the Project, FHWA regulations require the agency to determine whether the Final EA and FONSI "remain[] valid" by conducting a re-evaluation of those documents. 23 C.F.R. § 771.129. The purpose of that re-evaluation is to determine whether "a supplemental or new analysis (e.g., supplemental [EIS] or [EA]) is needed." NEPA Re-Evaluation Joint Guidance at 1. The FHWA has accordingly committed to a re-evaluation in light of "[t]he adopted TBTA toll rates and structure," FONSI at 26, which were only finalized on March 27, 2024. Until that re-evaluation is complete, there is no record upon which to decide Plaintiffs' claims that the FHWA's NEPA analysis must be supplemented. Plaintiffs' claims are therefore unripe.

The shifting nature of Plaintiffs' claims highlights their un-ripeness. In their complaints, the Plaintiffs allege that the FHWA's NEPA analysis needed to be supplemented because of information contained in the TMRB's December proposed tolling structure. *See NYAGC* Am. Compl. ¶ 174 ("TMRB's recommendation constitutes significant new circumstances or information . . ."); *Mulgrew* Am. Compl. ¶ 157 (same). But in their briefs, the Plaintiffs argue that the TBTA's *final* tolling schedule, adopted after Plaintiffs filed their lawsuits, constitutes new information. *See NYAGC* Br. at 12; *Mulgrew* Br. at 30. In other words, even Plaintiffs acknowledge that their claims as to these Counts are no longer based on facts in existence when their lawsuits were filed. Even if the final tolling schedule was all that was needed to ripen Plaintiffs' failure-to-supplement claims (as explained below, it is not), their claims would need to be dismissed. *See Western Union Telegraph Co v. FCC*, 773 F.2d 375, 378 (D.C. Cir. 1985) ("[A] challenge to [a] now-final agency action that was filed before it became final must be dismissed.").

But even more fundamentally, Plaintiffs are wrong that the final TBTA tolling schedule is all that the Court needs to adjudicate their failure-to-supplement claims. Regardless of what the

TBTA has determined, NEPA claims only challenge federal decision-making and the FHWA's re-evaluation is still ongoing. *See Town of Fairview v. U.S. Dep't of Transp.*, 201 F. Supp. 2d 64, 74 (D.D.C. 2002) ("[C]ases do not support the proposition that a court should intervene before a final decision is rendered and before an agency has had an opportunity to assess environmental effects of a project during the course of its normal administrative review" (emphasis omitted)). Although the *Mulgrew* Plaintiffs insist that they are challenging the FHWA's failure to supplement their NEPA analyses pursuant to 23 C.F.R. § 771.130[10] rather than the FHWA's anticipated re-evaluation pursuant to 23 C.F.R. § 771.129, *see Mulgrew* Br. at 30, the FHWA's re-evaluation is a *pre-condition* to its decision on whether to supplement: "whether a supplemental [NEPA review] is ultimately necessary depends on the findings and conclusions reached by the agency in its reevaluation." *Montlake Cmty. Club v. Mathis*, No. 17 Civ. 1780 (JCC), 2019 WL 3928732, at *4 (W.D. Wash. Aug. 20, 2019); *see also Norton v. Fed. Highway Admin.*, No. 01 Civ. 891 (JTE), 2002 WL 31017416, at *2-*3 (W.D.N.Y. Aug. 8, 2002) (claim seeking NEPA supplementation not ripe where re-evaluation was ongoing).[11]

Moreover, Plaintiffs are mistaken that the Court has all the information it needs to order the FHWA to supplement its environmental analysis. "Agencies need not supplement their NEPA

---

[10] This regulation relates to *EISs*, not the EA and FONSI that are at issue in this litigation.

[11] The *Mulgrew* Plaintiffs are mistaken in focusing on *South Carolina Wildlife Federation v. South Caroline Dep't of Transp.*, 485 F. Supp. 2d 661 (D.S.C. 2007). In that case, the court ruled that challenges to an *original* EIS were not rendered unripe by the possibility of re-evaluation. *See id.* at 671. The same is true here. The Federal Defendants have not argued that Plaintiffs' challenges to the original Final EA and FONSI (Count I) are unripe, only their "failure to supplement" claims.

*South Carolina Wildlife Federation* makes the same distinction. There, the court discusses how "[t]he statute of limitations for challenging final agency actions (i.e., the [original environmental analyses]" had expired, but how the "[p]laintiffs could still file suit challenging the reevaluation decision because that action would have its own statute of limitations." *Id.* at 671. This delineation mirrors the issues presented here and highlights how some NEPA claims can be time-barred even while others are not yet ripe.

analyses every time new information or circumstances emerge." *Earth Island Inst. v. U.S. Forest Service*, 87 F.4th 1054, 1069 (9th Cir. 2023). "Rather, the new information or circumstances must show that the action will affect the quality of the human environment in a significant manner or to an extent not already considered." *Id.* During the FHWA's re-evaluation, the FHWA will input the final tolls into the Final EA's traffic model to assess whether "the effects of the final tolling rates and structure are consistent with the effects disclosed in the Final EA." FONSI at 26. Given that the Final EA examined the Project using a methodology designed to anticipate the worst possible effects from the Project, Final EA at 3-5, a crucial (and yet unanswered) question is whether the final tolling schedule is projected to cause effects beyond those modeled in the Final EA. Given the technical nature of those projections, the Court will subsequently owe deference to the FHWA's analysis of those issues in its re-evaluation. *Latin Ams. for Soc. & Econ. Dev. v. Adm'r of Fed. Highway Admin.*, 858 F. Supp. 2d 839, 855 (E.D. Mich. 2012) ("[T]he FHWA's technical methodologies, including its traffic projections, are entitled to substantial deference."). In other words, evaluating the FHWA's alleged need to supplement its NEPA review in the absence of the FHWA's re-evaluation would inappropriately pre-judge the issue, particularly given it hinges on the FHWA's expert analysis. *See Native Songbird*, 2013 WL 3355657, at *7 (agency must be provided time to "respond to new information" and prepare an "expert determination" as to whether to supplement).

Plaintiffs remaining arguments all concern the prudential ripeness factors set forth in *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998), which require courts to consider: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would interfere with administrative action; and (3) whether the court would benefit from further factual developments. *Mulgrew* Br. at 31-34; *NYAGC* Br. at 12. Each factor counsels in favor of

finding Plaintiffs' claims unripe. As to the first, there is no risk that the Project will take effect before the FHWA completes its re-evaluation; the FHWA's NEPA review is a pre-condition to federal approval of the Project. Final EA at ES-4. As to the second, judicial intervention would interfere with the FHWA's own expert re-evaluation of the Final EA and FONSI based on the TBTA's final tolling structure. *See Town of Fairview*, 201 F. Supp. 2d at 75 (finding that judicial intervention while agency was "apply[ing] its expertise in addressing . . . environmental concerns . . . would constitute an inappropriate interference with the administrative responsibility that has been properly allocated to the" agency). And as to the third, the Court would surely benefit from the FHWA's analyses when assessing whether the final tolling structure would result in environmental effects significantly more adverse than the worst-case scenarios assessed in the Final EA and FONSI.

The FHWA has been clear in its intention to re-evaluate its environmental analysis after the TBTA adopted a final tolling structure. The FHWA is conducting that re-evaluation now, and Plaintiffs' challenges to that ongoing review are accordingly premature.

## CONCLUSION

For the reasons stated in the Federal Defendants' opening brief and herein, the Court should dismiss Plaintiffs' Amended Complaints.

Dated: April 22, 2024
      New York, New York

DAMIAN WILLIAMS
United States Attorney

By:    /s/ *Zachary Bannon*
ZACHARY BANNON
DOMINIKA TARCZYNSKA
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2728