UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
NEW YORKERS AGAINST CONGESTION
PRICING TAX, DANNY BUZZETTA, DR. GREGOR           Case No.1:24-cv-367(LJL)
WINKEL, LEE BERMAN, MEREDITH LeVANDE,
RITA SUE SIEGEL, TOMMY LOEB, KATHRYN FREED,
TREVER HOLLAND, RICKY YANG, PAUL ENG,
BARUCH WEISS, ROBERT FRIEDRICH, KEVIN
FORRESTAL, WARREN SCHREIBER, CHRISTOPHER
RYAN, BEN MASON, DENNIS ROSARIO, RABBI Y.S.
GINZBERG, JACOB ENGLANDER, AARON GONZALEZ,
HOWARD CHIN, ELAINE LA PENNA, THOMAS
ANTHONY SCARPACI, COUNCILMEMBER KRISTY
MARMORATO, COUNCILMEMBER VICKIE PALADINO,
COUNCILMEMBER JOANN ARIOLA, COUNCILMEMBER
SUSAN ZHUANG, COUNCILMEMBER KALMAN
YEGER, COUNCILMEMBER INNA VERNIKOV,
COUNCILMEMBER, ROBERT F. HOLDEN, RICHARD
PASSARELLI, STEVEN TRAUBE, FRANCISCO
GONZALEZ, JOSE COLLADO, VITO LaBELLA, AIXA
TORRES, JULIE VELEZ, DAPHNE BRUCCULERI,
DR. ALAN L. MINTZ, D.D.S., ASSEMBLYMEMBER
SIMCHA EICHENSTEIN, THOMAS ZABIELSKIS,
NINA JODY, MICHAEL KEKAFOS, NORMAN SPIZZ,
MICHAEL GROSS, EFRAIM REISS and ASSEMBLYMEMBER
MICHAEL NOVAKHOV, individually and on behalf
of all others similarly situated,

                                        Plaintiffs,

                                        v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, FEDERAL HIGHWAY
ADMINISTRATION, SHAILEN BHATT,
in his official capacity as Administrator of the
Federal Highway Administration, RICHARD J. MARQUIS,
in his official capacity as Division Administrator of the
New York Division of the Federal Highway Administration,
METROPOLITAN TRANSPORTATION AUTHORITY,
TRIBOROUGH BRIDGE AND TUNNEL
AUTHORITY, NEW YORK STATE DEPARTMENT OF
TRANSPORTATION, NEW YORK CITY DEPARTMENT
OF TRANSPORTATION and TRAFFIC MOBILITY
REVIEW BOARD,
                                    Defendants.
-------------------------------------------------------------------------x

```
---------------------------------------------------------------x
ELIZABETH CHAN, et al.,
                                                                    Case No. 1:23-cv-10365 (LJL)
                    Plaintiffs,
        v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, et al.,

                    Defendants.
---------------------------------------------------------------x
MICHAEL MULGREW, et al.,
                                                                    Case No. 1:24-cv-01644 (LJL)
                    Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, et al.,

                    Defendants.
---------------------------------------------------------------x
TRUCKING ASSOCIATION OF NEW YORK,
                                                                    Case No. 1:24-cv-04111 (LJL)
                    Plaintiff,

        v.

METROPOLITAN TRANSPORTATION
AUTHORITY, et al.,

                    Defendants.
---------------------------------------------------------------x
```

**MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION MOTION**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES……………………………………………………………………....ii
I.     INTRODUCTION……….…………………………………………………………………...1
II.    PROCEDURAL AND FACTUAL BACKROUND...…………………………………..4
III.   ARGUMENT
          PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION………………7
         A.    Likelihood of Success on the Merits……………………………………………7
         B.    Irreparable Harm…………………………………………………………………...8
         C.    The Public Interest is Served by Adhering to the Statutory Mandates of SAPA..9
IV.   CONCLUSION……………………………………………………………………......10

## TABLE OF AUTHORITIES

**Cases:** Page(s)

### FEDERAL DECISIONS

*AT&T Corp. v. Microsoft*,
    414 F.3d 1366 (2nd Cir. 2005)……………………………………………………..8

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290, 297 (D.C. Cir. 2006)………………………………………………7

*Citigroup Global Markets v. VCG Special Opportunities Master Fund*,
    598 F.3d 30 (2nd Cir. 2010)………………………………………………………7

*F. M. Schaefer Corp. v. C. Schmidt Sons, Inc.*,
    597 F.2d 814, 815-19 (2d Cir. 1979)……………………………………………10

*F.H.A. v. UBS*,
    712 F.3d 136 (2nd Cir. 2012)……………………………………………………..8

### NEW YORK STATE DECISIONS

*Albany Law School v. New York State Office of Mental Retardation and Development Disabilities*,
    19 N.Y.3d 106 (2012)…………………………………………………………….8

*Alweis v. Evans*,
    69 NY 2d 199, 204 (1987)………………………………………………………..8

*Matter of Burger King v. State Tax Commission*,
    51 N.Y. 2d 614 (1980)……………………………………………………………..8

*Matter of Lehman v. Board of Educ.*,
    82 A.D.2d 832, 834 (1st Dept. 1981)……………………………………………3

*Matter of Sun Beach v. Anderson*,
    98 A.D. 2d 367, 369 (2nd Dept. 1983) aff'd 62, N.Y.2d 965……………………8

*Nobu Next Door, LLC v. Fine Arts Hous. Inc.*,
    4 N.Y. 3d 839, (2005)…………………………………………………………...9

### State Statutes & Authorities

22 NYCRR Part 1021.4……………………………………………………………….5

Public Authorities Law § 553-J.……………………………………………………….5

State Administrative Procedure Act ("SAPA")

SAPA § 201-a…………………………………………………………………………………….3

SAPA § 202-b…………………………………………………………………………………….3,6

SAPA Article 1, § 102(2)(a)(i)(ii)……………………………………………………………….4

Traffic Mobility Act ("TMA")……………………………………………………………………7

Vehicle and Traffic Law ("VTL") § 1704-A…………………………………………………...5,7

**Other Authorities**

*McKinney's Consolidated Laws of New York*, Book 1 supra. Section 100………………………8

*McKinney's Consolidated Laws of New York,* Book 1, Statutes Section 98……………………..8

## I. INTRODUCTION

Plaintiffs NEW YORKERS AGAINST CONGESTION PRICING TAX, DANNY BUZZETTA, DR. GREGOR WINKEL, LEE BERMAN, MEREDITH LeVANDE, RITA SUE SIEGEL, TOMMY LOEB, KATHRYN FREED, TREVER HOLLAND, RICKY YANG, PAUL ENG, BARUCH WEISS, ROBERT FRIEDRICH, KEVIN FORRESTAL, WARREN SCHREIBER, CHRISTOPHER RYAN, BEN MASON, DENNIS ROSARIO, RABBI Y.S. GINZBERG, JACOB ENGLANDER, AARON GONZALEZ, HOWARD CHIN, ELAINE LA PENNA, THOMAS ANTHONY SCARPACI, COUNCILMEMBER KRISTY MARMORATO, COUNCILMEMBER VICKIE PALADINO, COUNCILMEMBER JOANN ARIOLA, COUNCILMEMBER SUSAN ZHUANG, COUNCILMEMBER KALMAN YEGER, COUNCILMEMBER INNA VERNIKOV, COUNCILMEMBER ROBERT F. HOLDEN, RICHARD PASSARELLI, STEVEN TRAUBE, FRANCISCO GONZALEZ, JOSE COLLADO, VITO LaBELLA, AIXA TORRES, JULIE VELEZ, DAPHNE BRUCCULERI, DR. ALAN L. MINTZ, D.D.S., ASSEMBLYMEMBER SIMCHA EICHENSTEIN, THOMAS ZABIELSKIS, NINA JODY, MICHAEL KEKAFOS, NORMAN SPIZZ, MICHAEL GROSS, EFRAIM REISS and ASSEMBLYMEMBER MICHAEL NOVAKHOV submit this Memorandum of Law in support of their application to enjoin defendants, METROPOLITAN TRANSPORTATION AUTHORITY ("MTA") and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY ("TBTA") from carrying out and implementing the first in the nation Congestion Pricing Tolling Program without following the safeguards protecting citizen rights set forth in the State Administrative Procedure Act ("SAPA").

An injunction in this matter is necessitated by the fact that despite the clear and unequivocal language of SAPA and the consistent notifications, comments and objections of plaintiffs, the Congestion Pricing Program is set to launch on January 5, 2025 in violation of the

rights of Plaintiffs. The Program will be commenced, unless enjoined, without complying with the legislative directive to incorporate the socioeconomic consequences of Congestion Pricing into its rulemaking process and decision making. This is a critical issue in this case. As set forth in detail in Plaintiffs' Verified Complaint, livelihoods are at stake, the viability of small businesses will be adversely impacted and job retention severely curtailed. This Program, left unevaluated, will be particularly harsh as applied to small businesses and individuals with limited incomes that rely upon their ability to commute by vehicle into the Central Business District.

  Governor Hochul, in announcing a pause to the Program in June 2024, justified that pause for the precise reasons the Legislature created SAPA. The Governor explained that Congestion Pricing would be paused by virtue of its harmful impact upon vulnerable and economically burdened citizens. Defendants' disregard of the clear mandate of SAPA is thus all the more perplexing in view of the Governor's recognition of the dire socioeconomic impacts of the Program.

  SAPA was designed to ameliorate and mitigate those impacts. It requires that prior to the application or implementation of a regulation or code, the socioeconomic consequences of rulemaking must be incorporated into the final regulatory statement published in the New York State Register. Congestion Pricing is unique in that the initiation, implementation and authorization of this Program targets commuters dependent upon vehicles for taxation that is not in existence anywhere else in the nation. It can be argued that all tolls are taxes of this nature. However, Congestion Pricing is a **new** Program, implementing laws, rules and regulations pertaining to tolls for the first time and thus is not merely an adjustment of existing tolls. The Program's uniqueness and unprecedented nature places it in a category prone to various impacts based upon the nature and extent of the rules regulating tolling. As Plaintiffs argued previously

in opposition to Defendants' motion to dismiss, the rules governing Congestion Pricing are broader and more complex than is typically the case in setting tolls. The rules govern exemptions, carve-outs, credits, discounts and time-of-day variations. It is undisputed that socioeconomic impacts were avoided in the rulemaking process carried out by Defendants in the formulation and promulgation of Congestion Pricing. The fact that Defendants adamantly refused to take advantage of the pause to fulfill their statutory obligations further supports issuance of an injunction at this point. Defendants offer no rationale as to why January 5, 2025 is the magical day that triggers an end to the pause. In any event, administrative and bureaucratic expediency is not a justification to violate the law.

It is a longstanding and immutable principle of New York Administrative Law that rules implicating public rights may not be voided or waived by the agency. *Matter of Lehman v. Board of Educ.*, 82 A.D.2d 832, 834 (1st Dept. 1981).

SAPA provides, in relevant part (emphasis supplied):

> § 201-a. Job impact. 1. In developing a rule, an agency shall strive to accomplish the objectives of applicable statutes in a manner which **minimizes any unnecessary adverse impacts on existing jobs and promotes the development of new employment opportunities**, including opportunities for self-employment, for the residents of the state.
>
> § 202-b. Regulatory flexibility for small businesses. 1. In developing a rule, the agency shall consider utilizing approaches that will accomplish the objectives of applicable statutes while **minimizing any adverse economic impact of the rule on small businesses** and local governments. Consistent with the objectives of applicable statutes, the agency shall consider such approaches as:
>
> (a) the establishment of differing compliance or reporting requirements or timetables that take into account the resources available to small businesses and local governments or the time needed by small businesses or local governments to come into compliance with the rule;

> (b) the use of performance rather than design standards; and an exemption from coverage by the rule, or by any part thereof, for small businesses and local governments so long as the public health, safety or general welfare is not endangered.

In prior motion practice in this case, Defendants rationalized their failure to abide by this critical law by arguing that the rulemaking to implement and apply Congestion Pricing is a Type (ii) rule rather than a Type (i) rule under SAPA Article 1. SAPA Article 1, § 102(2)(a)(i)(ii) distinguishes between Type (i) and Type (ii) rules as follows (emphasis supplied):

> 2. (a) "Rule" means (i) the whole or part of each agency statement, regulation or code of general applicability **that implements or applies law**, **or prescribes a fee charged by or paid to any agency** or the procedure or practice requirements of any agency, including the amendment, suspension or repeal thereof and (ii) **the amendment, suspension, repeal, approval, or prescription for the future of rates**, wages, security authorizations, corporate or financial structures or reorganization thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs or accounting, or practices bearing on any of the foregoing whether of general or particular applicability.

The critical question in this case, which undeniably must be answered in the affirmative, is have Defendants been authorized by the State Legislature with the task of implementing and establishing the contours of Congestion Pricing through its rulemaking capacity? If the answer is yes, an injunction is required to uphold the law.

## II.  PROCEDURAL AND FACTUAL BACKROUND

Plaintiffs' application for injunctive relief is necessitated because on November 18, 2024, Defendants rendered a final administrative determination setting the wheels in motion for Congestion Pricing to begin. In the absence of injunctive relief, Plaintiffs will begin to suffer the consequences of Defendants' violation of the law. Defendants published a notice in the State

Register, on or about November 18, 2024, that rules governing Congestion Pricing were filed with the Secretary of State. The final tolling structure and underlying rules are now effective. There can be no dispute at this juncture that Plaintiffs' SAPA claim has accrued and is now ripe for adjudication. See Exhibit "A," annexed hereto.

The rules promulgated by Defendants implemented and established the Traffic Mobility Act set forth in Vehicle and Traffic Law ("VTL") § 1704-A et seq. VTL § 1704-A(1) states, *inter alia,* as follows (emphasis supplied):

> Consistent with the goals of reducing traffic congestion within the central business district and funding capital projects the Triborough bridge and tunnel authority **shall have the power, subject to agreements with its bondholders, and applicable federal law to establish and charge variable tolls and fees for vehicles entering or remaining in the central business district at any time and shall have the power, subject to agreements with bondholders, and applicable federal law to make rules and regulations for the establishment and collection of central business district tolls, fees, and other charges**. For purposes of establishing a central business district toll or tolls the board shall, at minimum, ensure annual revenues and fees collected under such program, less costs of operation of the same, provide for sufficient revenues into the central business district tolling capital lockbox fund, established pursuant to Public Authorities Law § 553-J (Additional powers and provisions in relation to central business district tolling program) necessary to fund fifteen billion dollars for capital projects for the 2020 to 2024 MTA capital program, and any additional revenues above that amount to be available for any successor programs. (*emphasis added*)

The relevant factual background concerning events prior to Governor Hochul's pause is chronicled in Plaintiffs' Amended Verified Complaint (Dkt. No. 51, ¶¶73-109). Prior to the Governor's pause, Defendants adopted 22 NYCRR Part 1021.4, providing that a $15 toll schedule would be implemented in or about June 2024. See Exhibit "B," annexed hereto. By virtue of the Governor's pause, Defendants never filed a Notice of Adoption of the March 27,

5

2024 $15 toll schedule with the New York State Secretary of State and it never became law. Governor Hochul announced a "pause" in the implementation of Congestion Pricing on June 5, 2024. See [What They Are Saying: Governor Hochul Announces Pause on Congestion Pricing to Address the Rising Cost of Living in New York | Governor Kathy Hochul](#).

On June 5, 2024, the Defendants filed a letter informing the Court that Governor Hochul had directed the MTA to pause implementation of Congestion Pricing (see Dkt. No. 85). The initial plan was to commence Congestion Pricing on or about June 30, 2024. Notwithstanding the pause, the parties unanimously agreed that the Governor's announcement did not render the litigation moot. On June 20, 2024, this Court dismissed the SAPA claims as premature because the final tolling structure adopted by Defendants had not been filed with the Secretary of State or published in the State Register. The Court therefore dismissed Plaintiffs' SAPA claim, without prejudice, because it was premature (see Dkt. No. 93, p. 40).

On November 14, 2024, Governor Hochul announced the "unpausing" of Congestion Pricing and was implementation of a $9 toll instead of a $15 toll. See [What They Are Saying: Elected and Community Leaders Support Governor Hochul's Plan to Fund Transit and Put Commuters First | Governor Kathy Hochul](#). Thereafter, on November 18, 2024, Defendants adopted a resolution providing for a $9 principal toll. Part 1021.4 of NCRR Title 2 was formally adopted to provide for a $9 toll for most passenger vehicles and that over a 6-year period, it would rise to $15. The commencement date was set for January 5, 2025 without explanation pertaining to the truncated time period between publication in the State Register and public notice (*see* time period for notice and publication set forth in SAPA § 202, formal rule adopted on November 18, 2024 annexed hereto as Exhibit "A".)

## III. ARGUMENT

**PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION**

Four factors govern temporary restraining orders and preliminary injunctions. To warrant preliminary injunctive relief, the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Citigroup Global Markets v. VCG Special Opportunities Master Fund*, 598 F.3d 30 (2nd Cir. 2010), *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citations omitted) (preliminary injunction standards).

"A district court must 'balance the strengths of the requesting party's arguments in each of the four required areas," and "[i]f the showing in one area is particularly strong, an injunction may issue even if the showings in other areas are rather weak." *England*, 454 F.3d at 297.

### A. Likelihood of Success on the Merits

It is beyond doubt that the Defendants' promulgation of rules on or about November 18, 2024 established, authorized and enabled the implementation of the Traffic Mobility Act ("TMA") legislation. In the absence of rulemaking the TMA could not go forward. Pursuant to New York Vehicle and Traffic Law § 1704(1), the Defendants have the fundamental and primary responsibility to "establish the central business district tolling program." The tolling program is inextricably related to the planning, design and maintenance of the Congestion Pricing program. The program cannot operate without rules governing exemptions, time-of-day, ratemaking, credits and the process governing toll phases with increases toll rates reaching $15 – all factors weighing upon socioeconomic impacts.

7

It is a basic and longstanding principle of statutory construction that where a statute sets forth apparently conflicting provisions, those provisions should be harmonized in a manner that preserves the essential purposes of the legislative framework. *See Matter of Burger King v. State Tax Commission*, 51 N.Y. 2d 614 (1980); *McKinney's Consolidated Laws of New York, Book 1, Statutes Section 98*; *see also Matter of Sun Beach v. Anderson*, 98 A.D. 2d 367, 369 (2nd Dept. 1983) aff'd 62, N.Y.2d 965. The interpretation presented by Defendants in its motion to dismiss essentially repealed statutory language in SAPA pertaining to the implementation of laws. Implied repeal is distinctly not favored by principles of statutory construction. *See McKinney's Consolidated Laws of New York*, Book 1 supra. Section 100, which ensures that equitable practices are implied to meet the public interest. *See also Alweis v. Evans*, 69 NY 2d 199, 204 (1987).

A statute must receive such reasonable construction as will, if possible, render all its parts consistent with its scope and purpose. Thus, generally, a particular provision of an act is not to receive a special meaning at variance with the general purpose and spirit of the legislation. *See AT&T Corp. v. Microsoft*, 414 F.3d 1366 (2nd Cir. 2005); *see also F.H.A. v. UBS*, 712 F.3d 136 (2nd Cir. 2012); *see also Albany Law School v. New York State Office of Mental Retardation and Development Disabilities*, 19 N.Y.3d 106 (2012). Statutes must be interpreted as a whole consistent with the primary purpose of the legislation.

In this case, because Defendants set and implement categories of users and vehicles that are discounted and partially exempt or treated differently (such as low income commuters), and deny and exclude other users, particularly small businesses, from those partial discounts and exemptions, socioeconomic impacts and consequences are a paramount and material result of Defendants' rulemaking. Indeed, the Governor recognized the severe socioeconomic consequences of Congestion Pricing in issuing the "pause." It is therefore incomprehensible and

certainly irrational that the government would exclude socioeconomic consequences from its legislatively directed rulemaking process. Article 2 of SAPA was devised by the Legislature with precisely rules of this nature in mind. This is not merely an adjustment of tolls or amending previously established toll rates – this is the design and implementation of an unprecedented program with far reaching consequences.

### B. Irreparable Harm

To obtain a preliminary injunction, a party must demonstrate "irreparable harm" that is imminent, not remote or speculative. *See Nobu Next Door, LLC v. Fine Arts Hous. Inc*., 4 N.Y. 3d 839, (2005). In this case, the arbitrary start date of January 5, 2025 sets in motion a program that, once implemented, reaches a point of no return. The obstacles and costs of reversing a program put in place without weighing the socioeconomic consequences may be irreversible. Small businesses in particular must set delivery schedules in recognition and consideration of long-term planning. The loss of business, particularly in Chinatown, Little Italy and Times Square may be irreversible, as commuting and travel times are adjusted to consider costs. Job retention and reduction are also based upon long-term planning, which must consider costs and overhead in relation to commuting. Disruption of life for civil servants, nurses, firefighters and small entrepreneurs may be irreversible upon the implementation of Congestion Pricing.

### C. The Public Interest is Served by Adhering to the Statutory Mandates of SAPA

The third and fourth criteria for obtaining injunctive relief pertain to the public interest. The public would not be injured by the issuance of an injunction, rather the public interest would be served because incorporating socioeconomic consequences into the final rulemaking provision serves the statutory intent and purpose of SAPA. It is self-evident that the public interest will be served by the orderly implementation of Congestion Pricing consistent with the statutory requirements to incorporate socioeconomic consequences into final rulemaking. The

9

commencement of Congestion Pricing, while abrogating entire sections of SAPA which were designed to protect the public interest, especially small businesses and workers living paycheck to paycheck, is antithetical to the public interest. The public will be served, however, in abiding by the procedural safeguards of SAPA. During the course of this litigation, Defendants had a full opportunity, particularly because of the pause, to consider public testimony and implement rules that considered and minimized any unnecessary adverse impacts on existing jobs, and they could have considered public testimony and rulemaking that promoted the development of new employment opportunities thereby minimizing any adverse impacts of its rulemaking on small businesses. The failure to do so and the rush to implement Congestion Pricing in the waning days of the outgoing federal administration compels the issuance of injunctive relief. The "serious questions" standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. *See, e.g., F. M. Schaefer Corp. v. C. Schmidt Sons, Inc.*, 597 F.2d 814, 815-19 (2d Cir. 1979). In this case, weighing the costs of moving forward in the absence of statutory compliance combined with the public interest in maintaining an orderly and equitable process outweighs any argument claiming a public interest in meeting the January 5, 2025 arbitrary deadline.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue a preliminary injunction.

Dated: December 2, 2024
    East Hampton, New York

Respectfully submitted:

_____
Jack L. Lester, Esq.
*Attorney for Plaintiffs in New Yorkers, et al.*
41 Squaw Road
East Hampton, NY 11937
631.604.2228

11